John S. Purcell (SBN 158969)
Lynn R. Fiorentino (SBN 22691)
Douglas E. Hewlett, Jr. (SBN 293438)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401
Email:   john.purcell@afslaw.com
             lynn.fiorentino@afslaw.com
             douglas.hewlett@afslaw.com

Attorneys for Boscov's, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSCOV'S, INC.,<br><br>Defendant. | Case No.  22-CV-01434-DOC-ADS<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:            November 7, 2022<br>Time:           8:30 a.m.<br>Judge:         Hon. David O. Carter<br>Courtroom:  10A |

## INTRODUCTION

Boscov's is a family-owned department store based primarily in Pennsylvania, with its westernmost store located in Ohio. At first glance, it may be surprising that a California resident would even visit Boscov's website.[1] It becomes even more puzzling why she allegedly would start a conversation through the website's chat feature designed to help customers with their orders, when Plaintiff has never ordered anything from Boscov's. The plot thickens even more when Plaintiff claims her "privacy" was invaded by the conversation *she* initiated with an unfamiliar company over the Internet – ostensibly because Boscov's is somehow "wiretapping" its own website.

But once one realizes that Plaintiff and her counsel have been carpet bombing businesses across the country with the same cookie-cutter demand letter – insisting on six figures to settle Plaintiff's individual California Invasion of Privacy Act ("CIPA") claim based solely on a generic and unsubstantiated allegation that she used a company's website chat service – it becomes less surprising. It makes even more sense when one understands that this is Plaintiff's counsel's business model: partner with a consumer to troll websites for purported "violations" of consumer protection laws, and then attempt to extort an *in terrorem* settlement.[2] Indeed, one of Mr. Ferrell's previous targets is currently attempting to enforce a settlement agreement resolving a multi-year RICO lawsuit against him and his former firm.[3] This suit was based on various litigation schemes, one of which involved bribing individuals to "stage private phone calls to various companies" and then "threaten companies with statewide class actions under [CIPA Section 632] and, before the companies could

---

[1] *See* https://www.boscovs.com/.
[2] *See, e.g.*, https://www.tortreform.com/news/daily-dicta-paying-for-plaintiffs-rico-suit-accuses-california-firm-of-bribing-plaintiffs/ and https://www.karlinlaw.com/ada-accessibility-law/pacific-trial-attorneys-scott-j-ferrell-ada-website-lawsuits-and-claims/
[3] *See Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV-15-2034-JVS-JCGx, (C.D. Cal.).

discover the allegations were false, extort out-of-court settlements from these companies."[4]

What's past is prologue. But here, the Court has an opportunity to nip this new scheme in the bud because Plaintiff's attempt to criminalize routine communications over the Internet is foreclosed by a half century of CIPA precedent.

First, as for Plaintiff's original claim under Section 631, Boscov's cannot "intercept" messages as a party to the communication, which is exactly what Plaintiff is alleging here. Am. Compl. ¶ 11 ("Defendant has covertly embedded code into its chat feature that automatically records and creates transcripts of all such private conversations"). Simply put, only third parties can possibly "wiretap" under Section 631. This fact alone is fatal to Plaintiff's claim against Boscov's.

Second, and independently, Plaintiff is not even plausibly alleging that any interception or eavesdropping actually occurred *in transit* that would implicate Section 631. Her complaint effectively amounts to "how dare you not delete the message *I recorded* on your website." This self-created grievance is a "recording" complaint expressly occurring at the end point of the communication (Boscov's website), which would implicate, if anything, CIPA Section 632. It is not an "interception" or "wiretapping" complaint under Section 631 that can only occur when a message has not yet reached its destination.

Finally, as to Plaintiff's new claim under Section 632.7, the plain language of this statute makes it clearly inapplicable to the allegations at hand. By its unambiguous terms, Section 632.7 exclusively applies to communications transmitted **between two** telephones. Of course, Boscov's website is not a telephone, and Plaintiff was admittedly only communicating with Boscov's, if at all, on its website. Plaintiff's decision to amend her complaint to add this claim is therefore objectively meritless.

---

[4] *Id.*, 2020 WL 5239856, at *2 (C.D. Cal. Aug. 3, 2020).

## STATUTORY FRAMEWORK

It should be noted at the outset that California has a first-in-the-nation comprehensive privacy law that gives consumers control over their personal data – the California Consumer Privacy Act ("CCPA"). The CCPA purposely addresses how businesses can use consumers' information obtained online, what disclosures are required, and how such disclosures need to be made. There is no claim here – nor could there be – that Boscov's is not in compliance with any applicable requirements under the CCPA, the law that was enacted to specifically address online privacy issues and the larger Internet ecosystem.

Instead, Plaintiff's claims arise under CIPA, a law originally enacted in 1967 – obviously well before the Internet age – for the express purpose of preventing "eavesdropping upon private communications" and "the invasion of privacy resulting from the continual and increasing use" of "modern listening devices." Cal. Penal Code § 630. In short, the California Legislature wanted to prevent snooping on private conversations, and this is Plaintiff's attempt to put old wine in a new bottle.

Relevant here, Plaintiff brings a claim under CIPA Section 631 – which is a prohibition on "wiretapping" private communications in transit. More specifically, the California Supreme Court has held that Section 631 protects against three types of harms: "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication **in transit** over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978)) (emphasis added).

Critically, given CIPA's express purpose of preventing eavesdropping and as a further common-sense guardrail, Section 631 consistently "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979); *see also Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that

Section 631 applies **only** to "third party actions and therefore, as a party to the call, he **cannot be liable as a matter of law**"; further ruling by extension that a party to conversation **cannot "be liable** for aiding or conspiring with a third party to enable that party to listen in on the call.") (emphasis added).

In contrast, Section 632 applies to any person who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code 632. This language has uniformly been construed to prohibit one party to a confidential communication from recording that communication without the knowledge or consent of the other party. *Warden*, 99 Cal. App. 3d at 812.

More succinctly, Section 631 applies only to third parties intercepting private communications in transit, while Section 632 restricts any party from recording a confidential communication at its destination. *See People v. Nakai,* 183 Cal. App. 4th 499, 519, 107 Cal. Rptr. 3d 402, 418 (2010) (analyzing whether to exclude recorded chat transcripts under Section 632, and not Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user"); *see also People v. Cho,* No. E049243, 2010 WL 4380113, at *5 (Cal. Ct. App. Nov. 5, 2010) (online "chat conversations do not qualify as confidential communications for purposes of Section 632" and as result, holding that such conversations are not protected under CIPA).

Section 632.7 was an even later addition to CIPA. As one California court has detailed, this statute was introduced because "the author of the bill … was concerned that 'under [then] current law" [Section 632.6 passed in 1990], it [was] only illegal to 'maliciously' intercept a conversation transmitted between [cordless telephones]. There [was] no prohibition against recording a conversation transmitted between cellular or cordless telephones." *Granina v. Eddie Bauer LLC,* No. BC569111, 2015

WL 9855304, at *3 (Cal.Super. Dec. 02, 2015).  In other words, the California Legislature was of the view that the older sections of CIPA did not apply to even newer forms of *telephone calls*.[5]

As a result of this coverage gap, Section 632.7 was adopted to address an "**exclusive list** of five types of **calls** …: a communication **transmitted between** (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone. According to this list of included types of telephones, the communication **must have** a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone **on the other side**." *Montantes v. Inventure Foods*, No. CV-14-1128-MWF RZX, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014) (emphasis added).

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges in relevant part that, on its website, Boscov's "has covertly embedded code into its chat feature that automatically records and creates transcripts of all such private conversations" Am. Compl. ¶ 11.  With respect to these "private conversations," Plaintiff conclusorily asserts that "[g]iven the nature of Defendant's business" – an out-of-state department store – "visitors often share highly sensitive personal data with Defendant via the website chat feature." *Id.* ¶ 14.

Exactly what, if anything, Plaintiff herself communicated to Boscov's remains unclear.  Notably, in the "Factual Allegations" section of her original Complaint, Plaintiff specifically alleged that she used the chat program to communicate "with someone that Plaintiff believed to be [a] customer service representative."  Compl. ¶ 11. However, in her amended "Factual Allegations" section, Plaintiff merely alleges that "[w]ithin the statute of limitations period, Plaintiff *visited* Defendant's

---

[5]   One can only imagine how the Legislature would react to Section 630 being applied to written messages voluntarily exchanged through a website chat feature over the Internet.

Website," Am. Compl. 16, and "Defendant did not inform Plaintiff, *or* any of the Class Members, that Defendant was secretly wiretapping or recording their communications." *Id.* ¶ 17 (emphasis added).

Like numerous other cookie-cutter complaints Mr. Ferrell has recently filed, and now amended, Plaintiff also conclusorily alleges that Boscov's pays the chat service provider "to eavesdrop on the conversations." *Id.* ¶ 11. The storing of these chat transcripts is done, according to Plaintiff, to "then harvest data from the transcripts for financial gain" "for the benefit of" *Boscov's*. *Id.* ¶¶ 9, 12. Plaintiff further alleges that the chat service provider(s) were "acting as an agent and/or employee" for Boscov's and was "acting within the course and scope of said agency" at all relevant times. *Id.* ¶ 7.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under *Twombly*, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" *Id*. at 678-80 (quoting *Twombly*, 550 U.S. at 555).

Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct." *Nat.-Immunogenics Corp.*, 2020 WL 5239856, at *4 (C.D. Cal. Aug. 3, 2020) (further sanctioning Plaintiff's counsel in RICO suit brought against him and his former firm based on "threaten[ing] companies with statewide class actions under various California consumer protection statutes, and, before the companies could discover that the allegations were false, extort out-of-court settlements from these companies.").[6]

## ARGUMENT

### A. Boscov's Cannot "Intercept" Communications With Its Own Website.

Plaintiff's claim is fundamentally meritless because it is predicated on her theory that Boscov's is "wiretapping" its own website. *See* Am. Compl. ¶ 11

---

[6] For the avoidance of doubt, Boscov's clarifies here that in the interests of efficiency, the focus of this motion is to dismiss Plaintiff's clearly unwarranted claims in their entirety. By so doing, Boscov's is certainly not conceding, and in fact disputes, that Plaintiff is entitled to any of the particular relief she requests. For example, Plaintiff's request for injunctive relief is baseless because there is no risk of future "injury." "To establish standing to pursue injunctive relief, a plaintiff must allege a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) ). Unless Plaintiff plans on voluntarily chatting with Boscov's again (after she was expressly informed of its privacy policy), there is no risk of future "injury." Similarly, to be entitled to attorneys' fees under California law, a plaintiff needs to allege that there was a "necessity of private enforcement" *and* the plaintiff's side was not "motivated by their own pecuniary interests." *Bui v. Nguyen*, 230 Cal.App.4th 1357, 1367 (2014). Here, the California Attorney General actively enforces California privacy laws, expressly including CIPA. *See* https://oag.ca.gov/privacy/privacy-enforcement-actions. He just does not appear to believe that voluntarily communicating with a business website over the public Internet amounts to "eavesdropping on private communications" – and there is no indication Mr. Ferrell has attempted to persuade him otherwise. Nor would Mr. Ferrell ever be able to satisfy that he is not motivated by pecuniary gain, particularly when he is sending countless letters demanding tens of millions of dollars to resolve these coordinated and manufactured lawsuits.

("Defendant has covertly embedded code into its chat feature" on its website that "records and creates transcripts"). Per the plain language of Section 631, however, the "wiretapping" conduct that is actually prohibited is "intentionally tap[ping]" or "mak[ing] any unauthorized connection" with "any telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a).

It is illogical for Plaintiff to implicitly assert that providing a standard messaging service on its *own website* somehow meets these statutory requirements. No telephone lines are allegedly being "tapped" by Boscov's website, nor is Plaintiff claiming that Boscov's is not authorized to make a "connection" to its own website. Simply put, Plaintiff has not alleged *any* facts to support a wiretapping claim contemplated by Section 631 in this case.

Further, Boscov's cannot be liable under Section 631 for "eavesdropping" because it was a party to the purportedly "intercepted" communication. That is, California courts have long held that Section 631 applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Membrila v. Receivables Performance Mgmt., LLC,* No. 09-cv-2790, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (ruling that party to conversation could not have intercepted or eavesdropped, because only a third party **listening *secretly* to a *private* conversation** can do so).[7]

The case *Rogers v. Ulrich* analyzes a directly analogous fact pattern. There, the defendant installed a tape recorder jack on his telephone that allowed him to

---

[7] While Plaintiff's cookie-cutter complaint is scant on details, it should be noted that Boscov's chat feature on its publicly available website clearly discloses the identity of the company that provides this communication service in the chatbox itself. It is therefore no secret that an identified third party enables this customer service feature on its website – much like Verizon or AT&T provide voice and text service, and Microsoft and Google provide email services. It is therefore absurd for Plaintiff to suggest in her Complaint that Kustomer's involvement in providing the chat service is somehow a secret. As for Webex, its involvement is so secret not even Boscov's has any idea why they are named in the Complaint. Simply put, Boscov's has no knowledge of any involvement by Webex, and this is another cut-and-paste allegation by Plaintiff's counsel that has no evidentiary support.

record phone calls, and then share the recordings with the media. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897 (1975). In affirming the dismissal of the Plaintiff's Section 631 claim, the court explained that it cannot be "a secret to one party to a conversation that the other party is listening to the conversation; only **a third party** can listen **secretly** to **a private conversation**." *Id.* at 899 ("'Eavesdropping' is the problem the Legislature meant to deal with; 'eavesdrop' is defined in Webster's 7th New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.'") (emphasis added); *see also Powell v. Union Pac. R.R. Co.,* 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (granting a motion for summary judgment as to Section 631 claims against party to communication "[g]iven the settled nature of the third-party focus of section 631"); *Warden v. Kahn*, 99 Cal.App.3d 805, (1979) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

Here, as a threshold matter, Plaintiff has failed to allege that any *private* conversation was purportedly intercepted by *any* entity – let alone by Boscov's. The only "specific" allegations Plaintiff lodges is that she "visited Defendant's Website," Am. Compl. ¶ 16, along with later formulaic class allegations that "Plaintiff is asserting claims that are typical of the Class" as a person whose communications were supposedly recorded. Generic and conclusory allegations of communicating with a department store's online chat option over the public Internet hardly provides sufficient support for a private conversation occurring – quite the opposite.[8] Plaintiff

---

[8] Again, the express purpose of the Legislature enacting CIPA was to prevent "invasion of privacy" by "eavesdropping upon **private communications**." Cal. Penal Code § 630 (emphasis added). That Section 631 should only apply to private/confidential communications is further supported by Section 633.5, which expressly groups "Sections 631, 632, 632.5, 632.6, and 632.7" together so as not to "prohibit one party to a **confidential communication** from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication *of the crime of extortion* … ." Cal. Penal Code § 633.5 (emphasis added). It is difficult to see how this statute alone would not authorize the recording of any of Mr. Ferrell's clients' setup communications.

has therefore failed to plead any facts to support a reasonable inference that any private conversation occurred that falls within the scope of CIPA's protection.[9]

And specifically as to Boscov's, it is legally impossible that Boscov's can be "eavesdropping" on communications to its own website. Boscov's is indisputably a party to the communication. Plaintiff's apparent theory that Boscov's can "intercept" communications to it conflicts with nearly fifty years of Section 631 precedent. Indeed, Plaintiff's allegations are fundamentally no different than the dismissed Section 631 claim in *Rogers*, where the defendant was accused of recording telephone calls on his phone, and then sharing the recordings with third parties. That is what Plaintiff is alleging here, just with a newer technology.[10]

Finally, Boscov's suspects that in her Opposition, Plaintiff will likely point to a suspect line of distinguishable federal cases that depart from California state court precedent as to whether a party to a communication can nevertheless be liable for allegedly aiding and abetting a third party's eavesdropping. Critically, however, as other courts have explained, these decisions all hinged on allegations that the third parties were "independent parties who mined information from other websites and sold it" for the *third parties*' own gain. *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). That is, in these cases, the third parties were aggregating "data for resale" for the their own benefit, not the benefit of the website operator. *Id*.

That is expressly not this case. Plaintiff specifically alleges that the chat service provider(s) are "acting as an agent" of Boscov's and were "at all relevant

---

[9] It would be difficult to claim that a serial plaintiff trolling the chatboxes of online retailers' websites has any objectively reasonable expectation of privacy, let alone Article III standing, particularly when the whole purpose of this scheme is to later sue about the conversations in open court, if the preliminary smash-and-grab settlement efforts are not successful.

[10] As a matter of common sense, it is absurd to claim that a message recipient is "recording" a communication that the sender has already written. No reasonable person would ever say, "how dare you log, record and store the email I just sent you." That's the *essence* of modern electronic messaging – whether email, instant messaging, text messaging, social media posts, or website chat boxes. The Internet is forever.

times … acting within the course and scope of said agency." And as it relates to purported "data harvesting," Plaintiff also explicitly alleges that this is occurring "for the benefit of" Boscov's. Am. Compl. ¶ 12. In such cases, "[Kustomer] is an extension of [Boscov's]. It provides a tool – like the tape recorder in *Rogers* that allows [Boscov's] to record and analyze its own data in aid of [Boscov's] business." *Graham*, 533 F. Supp. 3d at 832 (holding service provider "is not a third-party eavesdropper" and website operator could not be liable for "aiding and abetting … wrongdoing because there is no wrongdoing.").

In short, Plaintiff has pled herself out of court by pleading that Boscov's is wiretapping its own website, and otherwise not deleting data Plaintiff herself recorded on Boscov's website. Boscov's clearly falls within the party exception to CIPA, and Plaintiff's Complaint should be dismissed on this basis alone.

### B. Plaintiff Fails To Plead That Any Actual Interception Occurred

Plaintiff's Section 631 claim independently fails because she does not plausibly allege that any *interception* of her communication *in transit* plausibly occurred. Rather, what she actually complains of is that Boscov's "*store[s] transcripts* of Defendant's chat communications" that individuals are recording themselves "in real time" on Boscov's website. Am. Compl. ¶ 11. That is the *end point* of the communication, which does not implicate Section 631's condition that the recording be "in transit."

Plaintiff's conclusory – and counterfactual – claims of "interception" are thus insufficient as a matter of law. *See In re Vizio Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *see also Rosenow v. Facebook, Inc.,* No. 19-cv-1297, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting motion to dismiss federal wiretap claim where allegations that communications were

intercepted "in transit" were "conclusory").

In analyzing the federal analogue to CIPA, the Wiretap Act, the Ninth Circuit held that intercepting a communication means to "to stop, seize, or interrupt in progress or course **before arrival**." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added).[11] It should be conceptually impossible for a party to a communication to "intercept" that same communication at its destination – here, Boscov's website. The court in *Rogers* fully embraced this conclusion as well under Section 630: "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Rogers*, 52 Cal. App. 3d at 898.

Section 632 would be entirely superfluous if recording a communication at its end point was also an "interception in transit" under Section 631. Indeed, when else would a party to a conversation record it – other than as it is being received on the destination device? It is not surprising, therefore, that California courts have consistently analyzed CIPA claims concerning "recording" chat transcripts under Section 632, and not 631. *See Nakai,* 183 Cal. App. 4th at 519; *see also Cho,* 2010 WL 4380113, at *5.

Ultimately, Plaintiff is attempting to dress up a Section 632 claim – which prohibits *recording confidential communications* without all parties' consent – as a Section 631 "wiretapping" claim – which applies to *third parties* intercepting private communications *in transit*. The Court should see through this bait and switch, because Plaintiff's view would criminalize all forms of modern electronic messaging over the Internet and other communications networks.[12] The simple fact is that

---

[11] "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018).
[12] When the parties' counsel met and conferred concerning this motion, Plaintiff's counsel refused to explain how he is not "intercepting" emails by purchasing a service to scan all messages *before* he receives them. Specifically, individuals emailing Plaintiff's counsel are informed after the fact that "[t]his email

Plaintiff alleged that she communicated with Boscov's website (perhaps). That is the end point of the communication. There can be no interception under these allegations, and Plaintiff's Section 631 claim should be dismissed on this independent ground.

### C. Plaintiff's New Claim Under Section 632.7 Is Facially Inapplicable To Website Chat Communications

Plaintiff *really* jumps the shark with the addition of her claim under Section 632.7. As detailed above, Judge Fitzgerald thoroughly analyzed this distinct provision of CIPA in *Inventure Foods*, finding that by its plain terms, Section 632.7 exclusively applies to communications transmitted **between** "(1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone." *Id.* at 2014 WL 3305578, at *4 (further noting that under California law, "individualized proof is required under § 632.7 to 'determine what type of telephone was used to receive the subject call.'" (citation omitted)).[13]

Simply put, there is no ambiguity in this statute. "[O]nly [the] **types of phones** listed in the statute are included," and the "communication must have a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone

---

has been scanned for spam and viruses by Proofpoint Essentials." This is the definition of interception, so it is unclear how he is not in violation of his own view of CIPA. More on point to his claims against Boscov's and possibly hundreds of other similarly situated website operators, he also refused to explain how Microsoft hosting his email service in the cloud is any different than a cloud-based chat service provider "who license the technology to Defendant." Compl. ¶ 12. In short, there is no difference. Boscov's chat service provider, like Microsoft, "is not a third-party eavesdropper. It is a vendor that provides a software service" and is treated as an extension of the party for purposes of CIPA. *See, e.g., Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021).

[13] The fact that Plaintiff is attempting to bring a putative class action under (1) a clearly inapposite statute that (2) would necessarily require individualized proof for each putative class member, indicates that this is not a remotely defensible claim. Put differently, this case is certifiable, but not as a class action.

1  **on the other side**." *Id.* (emphasis added).  That is clearly not this case according to
2  Plaintiff's allegations.  Indeed, Plaintiff alleges that she (may have) communicated
3  with Boscov's website – which is not a telephone of any kind.  That ends the matter.
4      While this admission is sufficient to dismiss Plaintiff's Section 632.7 claim
5  with prejudice, it should also be noted that Plaintiff does not even allege what device
6  *she* used when she supposedly visited Boscov's website.  Rather, she once again
7  lumps herself into the putative class of individuals who "use smart phones … desktop
8  computers, and/or wifi-enabled laptops."[14]  While smart phones could *potentially* be
9  a protected device, assuming there is also a covered telephone on the other side of
10 the communication, desktop computers and laptops are not devices covered by
11 Section 632.7 at all – just like websites.
12     At bottom, Plaintiff's claim under Section 632.7 is clearly not warranted by
13 the plain and unambiguous language of the law itself.  It is difficult to see how this
14 claim could be brought in good faith, and it should be dismissed with prejudice.

## Conclusion

16     For the foregoing reasons, Defendant respectfully request that Plaintiff's
17 Complaint be dismissed in its entirety.

---

[14] Without getting into a Brandolini's law rabbit hole, it should also be noted that Wi-Fi is *not* cellular.  The former is *unlicensed* spectrum using the IEEE 802.11 series of technical protocols and found at distinct frequency bands, compared to the latter, which is *FCC-licensed* common carrier spectrum found at other distinct frequency bands.  And only "cellular radio telephones," and not Wi-Fi devices, are covered by this statute. Plaintiff also alleges that "Plaintiff's communication was transmitted from a 'cellular radio telephone' and/or 'landline telephone' as defined by Section 632.7."  Am. Compl. ¶ 32.  Yet "landline telephone" is *not* even a term defined by Section 632.7 – presumably because calls *from* landlines to other landlines are not covered, as the statute was only meant to extend coverage to cellular telephones and cordless telephones.  Suffice it say, this claim should be taken out behind the barn and shot for multiple reasons.

| | |
|---|---|
| Dated:  October 3, 2022 | **ARENTFOX SCHIFF LLP** |
| | By: *[signature: Lynn R. Fiorentino]* |
| | JOHN S. PURCELL |
| | LYNN R. FIORENTINO |
| | DOUGLAS E. HEWLETT, JR. |
| | Attorneys for Boscov's, Inc. |