1   PACIFIC TRIAL ATTORNEYS
    A Professional Corporation
2   Scott J. Ferrell, Bar No. 202091
    sferrell@pacifictrialattorneys.com
3   4100 Newport Place Drive, Ste. 800
    Newport Beach, CA  92660
4   Tel: (949) 706-6464
    Fax: (949) 706-6469
5
    Attorneys for Plaintiff
6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  ANNETTE CODY, individually and on          Case No.  8:22-cv-01434-DOC-ADS
    behalf of all others similarly situated,
12
                  Plaintiff,                    **PLAINITFF'S OPPOSITION TO**
13                                              **DEFENDANT'S MOTION TO**
           v.                                   **DISMISS**
14
    BOSCOV'S, INC., a Pennsylvania
15  corporation; and DOES 1 through 25,
    inclusive,                                  Date: November 7, 2022
16                                              Time: 8:30 a.m.
                  Defendants.                   Judge: The Hon. David O. Carter
17                                              Courtroom: 10A

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ - 1 -

II. FACTUAL BACKGROUND............................................................................... - 1 -

III. STANDARD FOR MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) ..................................................................................................... - 2 -

IV. ARGUMENT ...................................................................................................... - 3 -

    A. CIPA Section 631(a) Applies to the Text-Based, Internet Communications Between Plaintiff and Defendant. ................................... - 3 -

    B. Section 631(a) Prohibits Defendant From Paying Kustomer and Webex To Secretly Eavesdrop and Monitor Internet Conversations. ...................................................................................... - 4 -

    C. Defendant's Argument that Kustomer is an Extension of Defendant is Contrary to the FAC and Applicable Law. ............................ - 5 -

        1. Defendant's Argument that Kustomer and Webex Are Merely "Extensions" of Boscov Contradicts the FAC. .................. - 5 -

        2. Boscov's "Third Party Extension" Argument Is Contrary to the Plain Language of the Statute and the Caselaw Interpreting It. ............................................................. - 5 -

        3. Defendants' Arguments and Authorities Do Not Support Their Position. ................................................................ - 7 -

    D. Plaintiff Clearly Alleges Actual Interception Occurred............................ - 9 -

    E. Section 632.7 Clearly Applies and Prohibits Defendant from Recording Conversations with Visitors Using Cellular Phones......................................................................................................... - 9 -

V. IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED ......................................................................................................... - 10 -

VI. DEFENDANT'S ALLUSIONS TO VIOLENCE AND VILE ATTACKS ON PLAINTIFF AND HER COUNSEL ARE IMPROPER AND MUST STOP.................................................................... - 11 -

    A. Plaintiff Should be Praised as a "Tester," Not Insulted as a "Troll."........................................................................................................ - 11 -

    B. Defendant's Insults and Violent Allusions Against Counsel Must Stop.................................................................................................. - 12 -

VII. CONCLUSION.................................................................................................. - 12 -

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adler v. Community.com, Inc.*,
   2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................2

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) (Carter, J.).........................................................12

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) .....................................................................................2

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. Oct. 23, 2015) .......................................................8

*In re Facebook Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020.) ..................................................................................7

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021).................................................................8, 9

*Jackson v. Carey*,
   353 F.3d 750 (9th Cir. 2003) ..................................................................................11

*Javier v. Assurance IQ, LLC*,
   2022 WL 1744107 (9th Cir. May 31, 2022)..................................................1, 3, 4

*Johnson v. Blue Nile, Inc.*,
   20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ...........................8

*Lauter v. Anoufrieva*,
   2011 WL 13182875 (C.D. Cal. June 28, 2011) .....................................................12

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ................................................................................11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ..................................................................................2

*Matera v. Google Inc.*,
   2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)......................................................4, 6

OPPOSITION TO MOTION TO DISMISS

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948 (7th Cir. 2006) ........................................................................11

*Popa v. Harriet Carter Gifts, Inc.*,
   45 F.4th 687 (3d Cir. 2022) ...........................................................................7

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. October 23, 2019) .........................................4, 7

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................... *passim*

*Tourgeman v. Collins Fin. Servs.*,
   Inc., 755 F.3d 1109 (9th Cir. 2014) ...............................................................11

*Yale v. Clicktale, Inc.*,
   20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ......................8

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .........................................................4, 5, 7

**California Cases**

*Gonzalez v. Seal Methods, Inc.*,
   223 Cal. App. 4th 405 (2014) ........................................................................6

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) .........................................................................6, 7, 9

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ..........................................................................7, 8

*Smith v. LoanMe, Inc.*,
   11 Cal. 15 ....................................................................................................7

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021) ................................................................................10

**U.S. Constitution**

Article III...........................................................................................................12

**California Statutes**

Penal Code
   § 631.........................................................................................................4, 5, 9
   § 631(a) ................................................................................... *passim*
   § 632.7.........................................................................................2, 9, 10
   § 632.7(a)(3).............................................................................................10
   § 632.7(c)(3).............................................................................................2
   California Invasion of Privacy Act ("CIPA").......................................... *passim*

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Federal Rules**

FRCP 12(B)(6) .............................................................................................................2

**Other Authorities**

https://kinginstitute.stanford.edu/king-papers/publications/autobiography-
    martin-luther-king-jr-contents/chapter-7-montgomery-movement ....................11

https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-parks-on-
    the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ ............11

https://www.natlawreview.com/article/timing-everything-ninth-circuit-
    addresses-chatbot-consent-requirements (last visited Oct. 10, 2022) ..................3

https://www.techtarget.com/searchmobilecomputing/definition/texting ................10

https://www.washingtonpost.com/politics/2021/10/28/violent-rhetoric-
    continues-permeate-gop/ ...................................................................................12

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3      Plaintiff Annette Cody's ("Plaintiff") allegations are simple: she had a private

4 conversation with Defendant Boscov's, Inc. ("Defendant") using a smart phone.

5 Without her consent, Defendant paid two independent, third-party companies

6 (Kustomer and Webex) to deploy highly intrusive spyware to intercept the conversation

7 in real time, eavesdrop on its, and harvest data from it for profit.   Defendant also

8 illegally recorded the conversation without her knowledge.

9      Just months ago, the Ninth Circuit ruled that the conduct alleged here plainly

10 violates the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a).

11 *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022)

12 ("*Assurance IQ*") (imposing liability for materially identical conduct, stating: "Though

13 written in terms of wiretapping, Section 631(a) applies to Internet communications. . .

14 and [recording such communication] "requires the prior consent of all parties.").

15      Strangely, Defendant' Motion <u>wholly</u> ignores the Ninth Circuit's directly-on-

16 point *Assurance IQ* opinion and instead devotes much of its brief to hurling vile, violent

17 – and false – insults at Plaintiff and her counsel.   When Defendant finally does address

18 the merits, it (1) misconstrues Plaintiff's key allegations; (2) misleads the Court about

19 binding Ninth Circuit authority; and (3) relies on cases that were abrogated by the Ninth

20 Circuit's *Assurance IQ* opinion.

21      Defendant's Motion should be denied in its entirety.   Separately, Plaintiff

22 requests the Court to sternly instruct defense counsel to both avoid allusions to violence

23 and abide by their civility and professionalism obligations.

24

**II.   FACTUAL BACKGROUND**

25      Plaintiff visited Defendant's Website using a smart phone (a cellular telephone

26 with an integrated computer that enables web browsing).   (Dkt. No. 12 ["FAC"] ¶ 16.)

27 She had a conversation with Defendant.   (*Id.*)   Without her knowledge, Defendant

28 wiretapped the conversation.   (FAC ¶ 9.)   Defendant also paid two independent, third-

1  party companies, Webex and Kustomer, to secretly record in real time, eavesdrop upon,

2  and store a transcript of the conversation.  (FAC ¶ 11.)

3      The two third parties – Webex and Kustomer – publicly boast of their ability to

4  harvest valuable data from such conversations for the benefit of their clients like

5  Defendant.  (FAC ¶ 12.)  That is why Defendant enabled, aided, abetted, conspired

6  with, and paid them substantial funds for their eavesdropping services.  (*Id.*)

7      Defendant's actions are not incidental to the act of facilitating e-commerce, nor

8  are they undertaken in the ordinary course of business.  (FAC ¶ 10.)  To the contrary,

9  they are contrary to industry norms and legitimate consumer privacy expectations.  (*Id.*)

10     Defendant did not inform Plaintiff, or any putative class members, that it was

11 secretly wiretapping or recording their communications, or paying third parties to

12 eavesdrop upon them.  (FAC ¶ 17.)  Defendant did not obtain express or implied

13 consent to wiretap or allow third parties to eavesdrop on their conversations.

14     On Sept 19, 2022, Plaintiff filed her First Amended Complaint [Dkt. 12] alleging

15 two causes of action for violations of CIPA: (1) Penal Code § 631(a), which generally

16 prohibits electronic wiretapping; and (2) Penal Code § 632.7, which generally prohibits

17 recording communication transmitted from cellular phones, including "communications

18 transmitted *by … data.*"  (Cal. Penal Code § 632.7(c)(3) (emphasis added.)

19 **III.   STANDARD FOR MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)**

20     Rule 12(b)(6) requires dismissal when a complaint fails to allege facts which, if

21 true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In deciding a motion to

23 dismiss, the court accepts as true all well-pled factual allegations and construes all

24 factual inferences in the light most favorable to the plaintiff.  *Manzarek v. St. Paul Fire*

25 *& Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).   Finally – and of particular

26 note here – a 12(b)(6) motion is limited to the contents of the complaint.  *Clegg v. Cult*

27 *Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

28

## IV.   ARGUMENT

### A.   CIPA Section 631(a) Applies to the Text-Based, Internet Communications Between Plaintiff and Defendant.

Defendant first claims – without authority – that section 631(a) does not apply to the internet communications at issue here.  Specifically, it argues that Section 631(a) only applies to "telegraph or telephone wires" and that "No telephone lines are allegedly being "tapped" by Boscov's website."  (Dkt. 14 ["MTD"] at 9:4-5, 9:8.)

Defendant is wrong.  The Ninth Circuit has expressly held that "[t]hough written in terms of wiretapping, Section 631(a) applies to Internet communications.  It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'  Cal. Penal Code § 631(a)." *Assurance IQ*, 2022 WL 1744107, at *1.[1]

Indeed, the conduct ruled unlawful by the 9th Circuit in *Assurance IQ* is ***precisely*** what Plaintiff complains of in the FAC:

> "Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". ***Here, Defendant does all three.***"

---

[1]  Defendant's conspicuous omission of the governing 9th Circuit *Assurance IQ* opinion was not inadvertent; in fact, defense counsel recently wrote a business development article devoted to *that very opinion*.  *See* https://www.natlawreview.com/article/timing-everything-ninth-circuit-addresses-chatbot-consent-requirements (last visited Oct. 10, 2022).  Therein, defense counsel urges prospective clients to comply with CIPA by doing exactly the opposite of what Boscov did here: notify users and obtain their consent before wiretapping or recording.

(FAC ¶ 25) (emphasis added.)

The 9th Circuit's opinion in *Assurance IQ* is not novel; even before it, "courts agreed that CIPA § 631(a) applies to communications conducted over the internet." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (referencing *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (holding section 631 applies to email communications) ("In sum, in light of the plain language of section 631, the legislative intent underlying CIPA to protect privacy, and the California Supreme Court's approach to applying statutes to new technologies, the Court finds that *Gmail's* application of section 631 to email was correct. The Court notes that following *Gmail*, two courts in this district have applied section 631 to electronic communications similar to email.").)

**B.     Section 631(a) Prohibits Defendant From Paying Kustomer and Webex To Secretly Eavesdrop and Monitor Internet Conversations.**

Defendant next argues that it is not liable under section 631 because "it was a party to the purportedly 'intercepted' communication." (MTD at 9:12-13.)  Put simply, Defendant misses the point: it is liable for "aid[ing], agree[ing] with, employ[ing]," and enabling the wiretapping and eavesdropping by Kustomer and Webex.

Again, Plaintiff alleges *exactly* what Section 631 prohibits: Defendant "has paid substantial sums to two independent, third-party companies (named "Webex" and "Kustomer") to. . . secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors."  Plaintiff even explains *why*: both Webex and Kustomer "harvest valuable data from such communications for the benefit of their clients like Defendant."  (FAC at ¶ 11.)

Courts have routinely held that the conduct alleged here violates CIPA's prohibition on "aiding and abetting" wiretapping. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) (finding CIPA § 631(a) claim viable against website owner that enabled wiretapping by third party); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (holding conversation participants liable for conspiracy because §

1  631 "was designed to protect a person placing or receiving a call from a situation where
2  the person on the other end of the line permits an outsider to tap his telephone or listen
3  in on the call"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal.
4  2021) ("A conversationalist is betrayed equally by a wiretapper and by the willing
5  conversation participant who surreptitiously allows that third party to wiretap. Yoon has
6  therefore stated a claim against Lululemon for violation of § 631(a).")

7  **C.    Defendant's Argument that Kustomer is an Extension of Defendant is**
8  **Contrary to the FAC and Applicable Law.**

9  Defendant next argues that "[Kustomer] is an extension of [Boscov's]" and
10  therefore is not really a third-party eavesdropper under section 631. (MTD at 12:3-5.)
11  Putting aside the fact that ***Kustomer itself rejects Boscov's "extension" claim***,[2]
12  Boscov's argument fails for at least three separate reasons.

13  **1.    Defendant's Argument that Kustomer and Webex Are Merely**
14  **"Extensions" of Boscov Contradicts the FAC.**

15  First, Defendant's position that Kustomer and Webex are mere "extensions" of
16  Boscov's ***directly*** contradicts the FAC. (MTD at 12:3-5.)  Plaintiff alleges that Webex
17  and Kustomer are "independent, third-party companies" who are paid by Defendant.
18  (FAC ¶ 11.)  As noted above, Kustomer agrees with Plaintiff.

19  Under such allegations, courts have uniformly and logically held that parties like
20  Webex and Kustomer are separate legal entities that offer "'software-as-a-service' and
21  not merely a passive device." *See Saleh*, 562 F. Supp. 3d at 520.

22  **2.    Boscov's "Third Party Extension" Argument Is Contrary to the**
23  **Plain Language of the Statute and the Caselaw Interpreting It.**

24  Defendant's argument that it can pay third parties to secretly monitor its
25  conversations with third parties is contrary to the plain text of section 631(a), California

26

---

27  [2]   Kustomer's Terms of Service found at www.kustomer.com/legal/terms/ state clearly:
"***You and we are independent parties. Nothing in these Terms will be construed to
28  make either party an agent, employee, franchisee, or legal representative of the other
party.***") (last visited Oct. 13, 2022) (emphasis added.)

1    Supreme Court and Ninth Circuit precedent, and the vast majority of California district
2    court decisions that have considered the issue.  *See Saleh*, 562 F. Supp. 3d at 520
3    (rejecting argument "that any third party who surreptitiously recorded a conversation
4    between two parties would not violate § 631(a) so long as it was recording the
5    conversation at the direction and for the benefit of a party.")

6          Other courts have rejected Defendant's proffered interpretation of section 631(a),
7    noting that it would "vitiate the statute's protections" and impair the privacy rights of
8    Californians.  Unlike its federal counterpart, section 631(a) requires the consent of "all
9    parties," and thus, "both parties — the sender and the recipient of the communication
10   — must consent to the alleged interception." *Matera v. Google Inc.*, 2016 WL 5339806,
11   at *16 (N.D. Cal. Sept. 23, 2016) (explaining difference between section 631(a) and
12   federal counterpart.)

13         In addition, section 631(a) imposes liability upon anyone who "employs … any
14   person" to engage in "any of the acts or things" prohibited under the statute.  Cal. Penal
15   Code § 631(a).  If it were permissible for a company to hire a third party to secretly
16   monitor communications between the company and its customers, this prong of section
17   631(a) would lack meaning.  *Gonzalez v. Seal Methods, Inc.*, 223 Cal. App. 4th 405,
18   409 (2014) ("In analyzing statutory language, we seek to give meaning to every word
19   and phrase in the statute to accomplish a result consistent with the legislative purpose.")

20         Next, the California Supreme Court has repeatedly stated the "express objective"
21   of CIPA is to "protect a person placing or receiving a call from a situation where the
22   person on the other end of the line permits an outsider to tap his telephone or listen in
23   on the call." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).  In *Ribas*,
24   the plaintiff's "wife asked defendant [the wife's lawyer] to listen on an extension
25   telephone, and defendant obliged." *Ribas*, 38 Cal. 3d at 358.  The California Supreme
26   Court held the wife's lawyer violated section 631(a), noting that "such secret
27   monitoring denies the speaker an important aspect of privacy of communication—the
28   right to control the nature and extent of the firsthand dissemination of his statements."

1    *Id.* at 361.  Last year the California Supreme Court reaffirmed *Ribas* when it explained

2    that "a substantial distinction has been recognized between the secondhand repetition of

3    the contents of a conversation and its simultaneous dissemination to an unannounced

4    second auditor, whether that auditor be a person or mechanical device." *Smith v.*

5    *LoanMe, Inc.*, 11 Cal. 15 5th 183, 200 (2021) (emphasis added.)

6          The Ninth Circuit has likewise held that one of the purposes of wiretapping

7    statutes is "to prevent the acquisition of the contents of a message by an unauthorized

8    third-party or 'an unseen auditor'"—like Kustomer and Webex here.  *In re Facebook*

9    *Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020.)

10         Finally, at least three different district courts adjudicating motions involving

11   similar internet spyware have rejected the proposition that section 631(a) permits

12   website owners to hire third parties to secretly monitor and record communications on

13   the website.  *See Saleh*, 562 F. Supp. 3d at 520-21; *Yoon*, 549 F. Supp. 3d at 1081;

14   *Moosejaw*, 2019 WL 5485330, at *2.  The Third Circuit recently reached a similar

15   conclusion with respect to Pennsylvania's anti-wiretapping law, which also has a two-

16   party consent requirement. *See Popa v. Harriet Carter Gifts, Inc*., 45 F.4th 687, 695 (3d

17   Cir. 2022) ("If, as Defendants argue, a party to a communication may lawfully intercept

18   it without the other person's consent just because it is a 'direct party' to that

19   communication, the all-party consent requirement disappears.").

20         The clear and consistent lesson of these authorities is that companies cannot

21   permit outsiders — especially paid third parties to secretly monitor communications

22   between companies and their customers.  That is precisely what Plaintiff alleges here.

23         **3.     Defendants' Arguments and Authorities Do Not Support Their**

24                 **Position.**

25         Finally, it bears noting most of the authorities cited in Defendant's moving

26   papers do not remotely support the positions attributed to them by Defendant.

27         ***First***, Defendant cites *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), for the

28   general proposition that one cannot be liable for eavesdropping on his or her own

conversations.  (MTD at 9:20-10:13.)  That case is of no moment here, as it involved a conversation with only two people: Rogers and Ulrich.  *Rogers*, at 896.  Ulrich installed a tape recorder on his phone to record Rogers, but the manufacturer of the recorder had no knowledge or involvement.  *Id.* at 898.

Other courts addressing similar internet spyware have rejected the analogy to *Rogers*.  Here, "[u]nlike the recorder[] in *Rogers* … [the third party recorder here] is a separate legal entity that offers 'software-as-a-service' and not merely a passive device."  *Saleh*, 562 F. Supp. 3d at 520.  In other words, Plaintiff alleges that Kustomer and Webex themselves — as separate legal entities — did the recording, and so the recording was being done by a third party, and not by Defendant simply using a tool.  *See also In re Facebook Internet Tracking Litig.*,140 F. Supp. 3d 922, 937 (N.D. Cal. Oct. 23, 2015) (distinguishing *Rogers* and similar authorities "because each involved recording by a known participant to a telephone conversation".)

***Second***, Defendant cites three cases decided by the same magistrate judge: the lead case — *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) — and two cases that followed *Graham* without additional analysis — *Johnson v. Blue Nile, Inc.*, 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) and *Yale v. Clicktale, Inc.*, 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021).  Defendant cites these disfavored authorities for the proposition that Kustomer and Webex are not third-party wiretappers; however, *Graham* is inapplicable for several reasons.  First, Plaintiff alleges that Kustomer and Webex are "independent third parties."  (FAC ¶ 11.) Second, in *Graham* the plaintiff did not allege that the spyware manufacturer actually intercepted or monitored the communications.  *Graham*, 533 F. Supp. at 823 ("[T]here are no allegations here that FullStory intercepted and used the data itself.").  Again, the opposite is true here: Plaintiff explicitly alleges that Kustomer and Webex are independent third parties that actively intercept, record, monitor and use the data from such conversations for profit.  (FAC ¶¶ 11, 12.)

Other courts have rejected the same interpretation of *Graham* that Defendant advances here. As the *Saleh* court explained, "Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate section 631(a) so long as it was recording the conversation at the direction and for the benefit of a party.  The text of § 631(a), however, does not contain any such exception, and indeed, Defendants invite an interpretation that would vitiate the statute's protections." *Saleh*, 562 F. Supp. 3d at 520.

Finally, the California Supreme Court's decision in *Ribas* further contradicts Defendant's reading of *Graham* because it shows that the surreptitious monitoring by a third party — whether an agent, vendor, or otherwise — violates section 631(a) *regardless* of whether the third party is wiretapping for its own benefit.  The *Ribas* court found that a lawyer violated section 631(a) by secretly listening in on her client's call, even though she did so solely for the benefit of her client to use in a legal proceeding on her client's behalf.  *Ribas*, 38 Cal. 3d at 358.  Thus, even if Kustomer and Webex had acted solely for Defendant's benefit, it would not matter.  In any event, the opposite is alleged here – that Kustomer and Webex profited from the scheme.

**D.    Plaintiff Clearly Alleges Actual Interception Occurred.**

Defendant next claims that "Plaintiff's Section 631 claim independently fails because she does not plausibly allege that any interception of her communication *in transit* plausibly occurred."  (MTD at 12:14-16.)

It is difficult to understand how Defendant reaches that conclusion: Paragraph 11 of the FAC clearly alleges that Defendant "paid Webex and Kustomer to secretly *intercept in real time*, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." (emphasis added).

**E.    Section 632.7 Clearly Applies and Prohibits Defendant from Recording Conversations with Visitors Using Cellular Phones.**

Finally, Defendant argues that "Section 632.7 is facially inapplicable to website chat communications."   (MTD at 14:4-5.)   In support, Defendant only recites the

1   language of the statute.

2   Again, Defendant is wrong: the application of 632.7 to this case is simple: **first**,

3   Plaintiff used a cellular phone to communicate with Defendant.[3]  (FAC ¶ 16.) **Second**,

4   Section 632.7 prohibits undisclosed recording when one of the parties is using a cellular

5   telephone.  *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021).  **Third**, Section 632.7

6   specifically covers data communication like texting. Cal. Penal Code § 632.7(a)(3)

7   ("'Communication' includes communications transmitted by voice, data, or image,

8   including facsimile.")  Quite simply, the key elements are clearly alleged: (1) use of a

9   cellular phone; (2) undisclosed recording; and (3) transmission of data communication.

10   Not surprisingly, Courts have applied section 632.7 to text communications.  In

11   *Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021), the

12   defendant offered a "platform" to exchange SMS text messages between customers and

13   celebrities.  In denying a motion to dismiss, the court found the 632.7 claim viable as to

14   <u>text</u> communications between cell phones and an internet "platform." *Id.* at *5.

15   Defendant cannot point to *a single case* in support of its argument that text based

16   communications are exempt from the protections of Section 632.7.   The alleged

17   conduct fits squarely within the prohibitions of section 632.7, and Defendant's motion

18   as to the Section 632.7 claim is misplaced.

19   **V.      IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED**

20   The straightforward and robust allegations in the FAC should be more than

21   sufficient to withstand the disjointed attacks in Defendant's 12(b)(6) Motion.

22   Nevertheless, if the Court determines that Plaintiff's FAC is wanting in any way,

23   Plaintiff requests leave to amend to cure any such deficiencies, as dismissal without

24

25   [3]   The act of using a cellular phone to text to a computer over the internet is common,
     and           is           known           as           "web           texting."           *See*
26   https://www.techtarget.com/searchmobilecomputing/definition/texting                 ("Text
     messaging  is  the  act  of  sending  short,  alphanumeric  communications  between
27   cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . .
     *Users also can send text messages from a computer to a hand-held device. Web*
28   *texting, as it's called, is made possible by websites called SMS gateways*.") (last visited
     Oct. 12, 2022) (emphasis added)..

OPPOSITION TO MOTION TO DISMISS

1   leave to amend is appropriate only when the deficiencies could not possibly be cured by

2   amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203

3   F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be

4   granted even if no request to amend was made.)

5   **VI.   DEFENDANT'S ALLUSIONS TO VIOLENCE AND VILE ATTACKS ON**

6   **PLAINTIFF AND HER COUNSEL ARE IMPROPER AND MUST STOP**

7        Litigation is inherently adversarial, but it need not be antagonistic and should

8   never devolve into violent allusions against counsel.  Plaintiff does not raise this issue

9   lightly, and only does so after trying to resolve the issue privately with defense counsel.

10       **A.   Plaintiff Should be Praised as a "Tester," Not Insulted as a "Troll."**

11       Defendant insults Plaintiff throughout its papers.  A few highlights: she is a

12   "troll", she is perpetrating a "smash and grab" scheme, and her claims "should be taken

13   out behind the barn and shot."  (MTD at 2:11-18, fn. 9, fn. 14.)

14       In reality, Plaintiff is a privacy advocate and litigation "tester" who works to

15   ensure that companies abide by California's privacy obligations.  As one who advances

16   important public interests at the risk of personal attacks, she should be "praised rather

17   than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).[4]

18       Indeed, in enacting CIPA, the California legislature intentionally chose to extend

19   its protections to all "persons" utilizing public telephone lines – not merely customers

20   or individuals claiming pecuniary loss.  As a result, the important public benefit of

21   statutes like CIPA are largely secured by "testers" such as Plaintiff. *See Tourgeman v.*

22   ────────────────────────────
[4]   American civil rights hero Rosa Parks was acting as a "tester" when she initiated the

23   Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to unlawful
     conduct to challenge the practice.  *See* https://www.naacpldf.org/press-release/ldf-pays-

24   tribute-to-rosa-parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-
     segregation/ ("*Contrary to popular myth, Rosa Parks was not just a tired seamstress*

25   *who merely wanted to sit down on a bus seat that afternoon. She refused to give up her*
     *seat on principle. Parks had long served as the secretary of the Montgomery branch of*

26   *the NAACP. Challenging segregation in Montgomery's transportation system was on*
     *the local civil rights agenda for some time.*") (last visited Oct. 12, 2022).  As here,

27   Defendant hurled vile insults at Plaintiff to deflect from its own illegal behavior.  *See*
     https://kinginstitute.stanford.edu/king-papers/publications/autobiography-martin-luther-

28   king-jr-contents/chapter-7-montgomery-movement (detailing insults aimed at plaintiff
     intended to discourage her from acting as a tester).

1   *Collins Fin. Servs.*, Inc., 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have

2   Article III standing and discussing importance of testers in enforcement of consumer

3   protection and civil rights statutes.)

4       **B.     Defendant's Insults and Violent Allusions Against Counsel Must Stop.**

5       Defendant saves the ***real*** invective for Plaintiff's counsel: he is "carpet bombing

6   businesses across the country", his "business model" is to "extort *in terrorem*

7   settlements", and his case "should be taken behind the barn and shot." (MTD at fn.14.)

8       This Court has previously stated its displeasure with far lesser smears. *Bruno v.*

9   *Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (Carter, J.) ("The

10  Court is troubled that Defendants have devoted valuable pages in their Opposition to an

11  apparent smear campaign . . . ."). At a minimum, references to facts outside the FAC

12  should be stricken. *Lauter v. Anoufrieva*, 2011 WL 13182875, at *2-*3 (C.D. Cal. June

13  28, 2011) (striking numerous statements of counsel as "inflammatory.") In short,

14  violent rhetoric has real consequences and it should stop.[5]

15  **VII.  CONCLUSION**

16      For the reasons set forth above, Defendant's Motion should be denied in its

17  entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiff

18  requests leave to amend.

19

20  Dated: October 14, 2022                PACIFIC TRIAL ATTORNEYS, APC

21

22  By:_____
                                           Scott. J. Ferrell

23                                         Attorneys for Plaintiff

24

25

26  _____

27  [5]  As this Court is well aware, overheated rhetoric and allusions to violence often incite violent action while providing the author with plausible deniability. *See* https://www.washingtonpost.com/politics/2021/10/28/violent-rhetoric-continues-permeate-gop/ ("extreme supporters have a way of taking the hint. . .from violent rhetoric.") (last visited Oct. 12, 2022).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, I electronically filed the foregoing **PLAINITFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell