PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSCOV'S, INC., a Pennsylvania corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.  8:22-cv-01434-DOC-ADS<br><br>**PLAINITFF'S OPPOSITION TO THE RETAIL LITIGATION CENTER INC.'S EX PARTE APPLICATION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF DEFENDANT BOSCOV'S MOTION TO DISMISS** |

# I.    INTRODUCTION

The *ex parte* application by serial litigant Retail Litigation Center[1] should be summarily denied for four separate and independent reasons:

**First**, it is dramatically untimely and would severely prejudice Plaintiff.  RLC knew of this case for two months but waited until four days before the hearing to present its "urgent" *ex parte* application.  Moreover, in the rare circumstances that *amicus* briefs are permitted in District Court, they are to be filed "after the party the amicus is supporting files its principal brief, ***but sufficiently in advance of the opposing party's responsive brief.***")  That deadline passed quite some time ago with RLC's full knowledge, and it would be unfair to reward Defendant's trade group for its delay by giving it a second bite at the proverbial apple after briefing has closed.

**Second**, RLC cannot show the "irreparable injury" prerequisite for presentation of *ex parte* motions.  Instead, RLC wants to brief a "straw man" argument not at issue in this case: "*How can it be illegal for a company to keep a copy of the written communications that its customers send to it?*"  Of course, that is not what is in dispute here: Plaintiff alleges that Defendant secretly paying third parties to intercept consumer communications, record them, and harvest them for marketing data without customer consent.

**Third**, because the Federal Rules provide no basis for the filing of amicus briefs in District Courts, they are disfavored and only appropriate when "a party is not represented competently or is not represented at all" – a showing which RLC does not even attempted to show.  Moreover, a movant must submit the proposed *amicus* brief *along with its motion for leave* – which RLC did not do here.

**Fourth and finally**, there is nothing novel about this matter, nor has there been any "intervening decision, legislation, or event" that might justify a last-minute

---

[1]   The Retail Litigation Center is Defendant Boscov's agent and industry lobbying group.  *See*  https://www.rila.org/retail-litigation-center  ("The RLC is the only organization dedicated to advocating for the industry's top priorities in the federal and state judiciary…we file about 20 briefs per year totaling nearly 200 to date.").

intervention: Plaintiff alleges a straightforward violation of the California Invasion of Privacy Act ("CIPA") that is clearly actionable under the controlling 9th Circuit authority of *Javier v. AssuranceIQ*.  Based on available facts noted below, Plaintiff surmises that RLC has been activated by its members to do "damage control" by presenting the type of nuanced, thoughtful arguments that Defendant *could have made and should have made* in its 12(b) motion, but which it chose not to.

Any one of the reasons would be sufficient to deny RLC's *ex parte*.  Together, they overwhelmingly compel denial.

## II.     FACTUAL BACKGROUND

### A.     This Matter Was Filed Two Months Ago and Briefing on the Pending 12(b) Motion is Closed.

This matter was filed two months ago – on September 2, 2022.  (Docket at 1). Defendant filed its Motion to Dismiss Plaintiff's First Amended Complaint on October 3, 2022.  (Docket at 13).  Plaintiff filed her Opposition on October 14, and briefing closed with Defendant's Reply on October 24.  (Docket at 18, 22).

RLC has been aware of and monitoring this case since its inception.[2]  In other words, RLC sat idly for two months before presenting its last-minute request to submit an *amicus* brief after briefing on the 12(b) motion has closed – and it is now just three business days before the hearing set for Monday, November 7.

### B.     Plaintiff's Complaint Sets Forth a Straightforward Violation of CIPA.

The issues for decision on the current record are straightforward:

Plaintiff had a private conversation with Defendant Boscov's on her smart phone. Without her consent, Defendant recorded the conversation and paid two independent

---

[2]   On August 22nd, Plaintiff's counsel spoke by telephone with Meredith Slawe, Esq., of the Skadden Arps law firm.  In that conversation, Ms. Slawe stated that the Skadden firm represented RLC and that RLC was aware of and monitoring the CIPA cases filed by counsel for Plaintiff.  As such, RLC knew about this case for at least two months before presenting its "urgent" *ex parte* application.  To be clear, Plaintiff does not attribute any intentional deceit to RLC's current counsel, Mr. Cardon, who is likely unaware of RLC's prior involvement.  Indeed, Mr. Cardon has been entirely forthright, professional and civil in his dealings with Plaintiffs' counsel.

1    vendors (Kustomer and Webex) to deploy spyware to intercept the conversation in real

2    time, eavesdrop on its, and harvest data from it for profit.  (FAC at 9-12).  Defendant's

3    actions were contrary to both industry norms and legitimate consumer privacy

4    expectations, as the vast majority of companies obtain informed consent for such

5    privacy intrusions, and website visitors do not expect their conversations to be

6    intercepted and harvested to extract personal marketing data.  (FAC at 10).

7       The FAC asserts two claims: (1) violation of Penal Code § 631(a), which

8    generally prohibits electronic wiretapping; and (2) Penal Code § 632.7, which generally

9    prohibits recording communication (including data/text communications) when one

10    party is communicating via a cell phone.

11       Just months ago, the Ninth Circuit ruled that the general conduct alleged in the

12    FAC violates CIPA: in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir.

13    May 31, 2022), the 9th Circuit ruled that (1) Section 631(a) "applies to internet

14    communications" (like those alleged in the FAC); and (2) recording or wiretapping such

15    communication (as  alleged in the FAC) "requires the prior consent of all parties",

16    which Defendant neither sought nor obtained.

17
      **C.**      **Defendant's 12(b) Motion Flounders Outside the Pleadings So RLC is**
18
                **Activated For Damage Control.**

19       In its 12(b) Motion, one might have expected Defendant to present thoughtful and

20    nuanced arguments about the CIPA's legislative history or the inherent complexities

21    involved in applying older statutes to modern technology; Defendant might even have

22    presented a novel constitutional defense or opined about the intended scope or

23    application of the 9th Circuit's opinion in *AssuranceIQ*.

24       Instead, Defendant ignored *Assurance IQ* and spent the bulk of brief hurling vile

25    insults and allusions of violence toward Plaintiff and her counsel.[3]  Respected opposing

---

26
27
28
3   *See* Motion to Dismiss at fn 14 (case "should be taken out behind the barn and shot"); fn 9 (accusing Plaintiff of a "smash-and-grab" robbery scheme); and 2:16-18 (calling Plaintiff a "troll" and accusing her of "attempting to extort an *in terrorem* settlement.").

PLAINTIFF'S OPPOSITION TO THE RETAIL LITIGATION CENTER INC.'S EX PARTE APPLICATION FOR
LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF DEFENDANT BOSCOV'S MOTION TO DISMISS

1    counsel familiar with the briefing in this case have described Defendant's motion as "a

2    hot mess" and "embarrassingly unbecoming", but Defendant doubled-down in its Reply

3    Brief and insisted that "no reasonable person" would interpret its violent allusions as

4    "anything other than a rhetorical flourish."[4]

5        With this background and viewed through this lens, the last-minute request by

6    RLC to reopen briefing on the 12(b) motion should be denied for several reasons.

### III.   ARGUMENT AND AUTHORITIES

7

### A.   RLC's Request Is Dramatically Untimely and Prejudicial to Plaintiff.

8

9        The Federal Rules of Civil Procedure do not provide for *amicus* briefs.  Thus,

10   while authority is scarce, consensus is that an *amicus* brief should be filed "after the

11   party the *amicus* is supporting files its principal brief, but ***sufficiently in advance of the***

12   ***opposing   party's   responsive   brief.***"   *See*   https://www.gibsondunn.com/wp-

13   content/uploads/2020/12/Shapiro-Crain-LeSavage-Tips-for-District-Court-Amicus-

14   Brief-Success-New-York-Law-Journal-12-23-2020.pdf.

15       That is obviously not the case here: briefing on the 12(b) Motion has closed.

16   Indeed, RLC's delay was intentional: (1) RLC has known about this case for months;

17   and (2) RLC secured advanced permission from Boscov but delayed making the request

18   to Plaintiff's counsel until five days before the scheduled hearing.

### B.   RLC Does Not Show "Irreparable Injury" Required for *Ex Parte*

19

### Applications.

20

21       *Ex parte* applications, by which RLC seeks "to go to the head of the line in front

22   of all other litigants and receive special treatment," are "rarely justified." *Mission*

23

24   ---
     [4]   *See* Reply at fn 13.  Defendant's *"No reasonable person"* argument is the ***exact***
     ***phrase*** used by former President Trump to distance himself from the January 6th
     violence inspired by his rhetoric.  See https://www.washingtonpost.com (quote from
25   Trump attorney claiming "***no reasonable person*** would believe that [the speech] was a
     call to action, or an endorsement of violence. . .").  But Defendant's concession proves
26   plaintiff's point: violent rhetorical allusions spur action while providing the author with
     plausible                         deniability.                         *See*
27   https://www.washingtonpost.com/politics/2021/10/28/violent-rhetoric-continues-
     permeate-gop/ ("extreme supporters have a way of taking the hint from violent
28   rhetoric.").

*Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490, 492 (C.D. Cal. 1995).

To justify such rare, special relief, the moving party must, at a minimum, show: (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id*. at 492.  These requirements are necessary because *ex parte* applications "are inherently unfair" as the parties' opportunities to prepare "are grossly unbalanced." *Mission Power*, 883 F. Supp. at 490.

Here, RLC fails on all three requirements: RLC argues without authority that "Because there is not sufficient time for the RLC to file a regularly noticed motion, *ex parte* relief is appropriate, and irreparable injury would exist without it.") (Motion at 10:17).  But that is simply not true: RLC has known about this case since it was filed and could easily have filed a regularly-noticed motion. Instead, as noted above, RLC appears to have been hastily activated by its membership precisely because Boscov's 12(b) Motion was – in the words of other defense counsel – an  "embarrassing hot mess."

RLC states that it wants to brief this issue: "How can it be illegal for a company to keep a copy of the written communications that its customers send to it?"  But that "straw man" argument is not at issue in this case.  The FAC claims that Defendant secretly paying third parties to intercept such communications, record them, and harvest them for marketing data without obtaining customer sent.  (Complaint at Intro., Paragraphs 8-13).

Tellingly, RLC's Motion does not even mention the 9th Circuit's governing opinion in *AssuranceIQ*.  Rather, RLC wants to "provide further background on the allegations at play, which threaten all of the RLC's retail members."  (Motion at 5:7-9). While there conceivably might be an appropriate forum for such commentary, an *ex parte* motion four days before the scheduled hearing is the wrong vehicle and a 12(b) motion (which is limited to matters raised in the FAC) is the wrong forum.

C.  **Amicus Briefs To District Courts Are Disfavored And Requests To File Them Must Attach the Proposed Brief, Which RLC Did Not Do**.

"The vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term "amicus curiae" means friend of the court, not friend of a party. *United States v. Michigan*, 940 F.2d 143, 164–65 (6th Cir.1991).

As the Federal Rules of Civil Procedure provide no basis for filing *amici* briefs, they are disfavored.  *See Cobell v. Norton*, 246 F. Supp. 2d 59, 62-63 (D.D.C. 2003) ("[A]n amicus brief should only be allowed when a party is not represented competently or is not represented at all.").  Here, there has been no showing that RLC would raise matters appropriate for resolution via a 12(b) that its member Defendant Boscov's did not already raise.  Going from bad to worse, RLC proposes that it file its brief on November 14 (after having had more than two months to prepare it and would give Plaintiff only one week to oppose it).

Finally, RLC did not even attach its proposed brief, which itself is an independent ground to deny the request.  *See* Fed. R. App. P. 29(a)(3) (a motion for leave to file *an amicus curiae* brief "must be accompanied by the proposed brief".).

D.  **There is Nothing Novel That Would Justify RLC Filing a Second Brief on Behalf of its Member Defendant Boscov.**

The issues for decision on the current record are straightforward: Plaintiff had a private conversation with Defendant Boscov's on her smart phone. Without her consent, Defendant recorded the conversation and paid two independent vendors (Kustomer and Webex) to deploy spyware to intercept the conversation in real time, eavesdrop on its, and harvest data from it for profit.  (FAC at 9-12)  Defendant's actions were contrary to both industry norms and legitimate consumer privacy expectations, as the vast majority of companies obtain informed consent for such privacy intrusions, and website visitors

do not expect their conversations to be intercepted and harvested to extract personal marketing data.  (FAC at 10).

The FAC asserts two claims: (1) violation of Penal Code § 631(a), which generally prohibits electronic wiretapping; and (2) Penal Code § 632.7, which generally prohibits recording communication (including data/text communications) when one party is communicating via a cell phone.

The Ninth Circuit ruled that the general conduct alleged in the FAC violates CIPA: in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022), the 9th Circuit ruled that (1) Section 631(a) "applies to Internet communications" (like those alleged in the FAC); and (2) recording or wiretapping such communication (as  alleged in the FAC) "requires the prior consent of all parties", which Defendant neither sought nor obtained.

As noted above, RLC does not wish to address those issues; indeed, RLC's Motion does not even mention the 9th Circuit's governing opinion in *AssuranceIQ*. Rather, RLC wants to "provide further background on the allegations at play, which threaten all of the RLC's retail members."  (Motion at 5:7-9).  Such a motion is not appropriate at the 12(b) stage, which is limited to matters in the pleadings.

**E.     If RLC is Permitted to File an Amicus Brief, The Electronic Frontier Foundation Should Be Permitted To Do So As Well.**

In the unlikely event that RLC's Motion is granted, the Electronic Frontier Foundation – the "leading nonprofit organization defending civil liberties in the digital world through impact litigation, policy analysis, grassroots activism, and technology development"[5] – has expressed preliminary interest in filing a counter *amicus* brief to address any new arguments that RLC intends to raise.

As such, if the Court does allow RLC to file an amicus brief, Plaintiff requests that the Court extend the briefing schedule by at least 60 days to allow EFF or a similar group to present a brief on behalf of Plaintiff and the class.

---

[5]   *See* https://www.eff.org.

1

## IV.   CONCLUSION

2

     For all of the preceding reasons, RLC's untimely, unjustified, and unsupported

3

Motion should be denied in its entirety.

4

Dated:  November 2, 2022                     PACIFIC TRIAL ATTORNEYS, APC

5

6

                                        By: _____

7

                                             Scott. J. Ferrell
                                             Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2022, I electronically filed the foregoing **PLAINITFF'S OPPOSITION TO THE RETAIL LITIGATION CENTER INC.'S EX PARTE APPLICATION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF DEFENDANT BOSCOV'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell