PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BOSCOV'S, INC., a Pennsylvania corporation; and DOES 1 through 25, inclusive,<br><br>    Defendants. | Case No.  8:22-cv-01434-SSS-KK<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

**Defendant Boscov's, Inc. ("Defendant") secretly enables and allows a third-party spyware company to eavesdrop on the private conversations of everyone who communicates through the chat feature at www.boscovs.com (the "Website").**

**Defendant does this without visitors' informed consent. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA").**

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Specifically, if only 1,000 California consumers interreacted with the chat feature on Defendant's Website a single time during the Class period, statutory damages exceed $5,000,000. Upon information and belief, many times that number of consumers have interacted with Defendant's chat feature during the Class period.

2. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District. Specifically, Plaintiff interacted with Defendant's Website while located in this District.

3. Defendant is subject to personal jurisdiction because it has sufficient minimum contacts with California and it does business with California residents.

## PARTIES

4. Plaintiff is a resident and citizen of California and resides within the Central District of California.

5. Defendant is a for-profit Pennsylvania corporation with its headquarters in Pennsylvania. Defendant operates nearly fifty locations in the United States and generates annual revenues of over $1.5 billion, including substantial revenue from sales generated through the website.

6. Defendant owns, operates, and/or controls the Website related thereto. The Website also provides a list of its locations, allows for online purchases and, during relevant times, provided an online "chat" feature.

7. Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

8. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## FACTUAL ALLEGATIONS

9. CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

10. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant enables and allows an independent third party to eavesdrop on all such conversations. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make*

---

[1] https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last visited Feb. 26, 2023) (emphasis added).

*informed business decisions. . .****When people are chatting, you have direct access to their exact pain points."***).  See  https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited Feb. 26, 2023) (emphasis added).

11. Defendant's actions are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions are contrary to industry norms and the legitimate expectations of consumers.

12. To enable the eavesdropping, Defendant has covertly embedded code into its chat feature that enables and allows a third party called Kustomer to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and personal.  Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

13. One might reasonably ask why a seemingly independent third-party like Kustomer would be interested in intercepting and recording the website chat interactions between Defendant and unsuspecting visitors to Defendant's website?  As shown below, it all goes back to money.

14. To start, Kustomer is owned by Meta, Inc. – which also owns Facebook, Instagram, and WhatsApp.  According to Bloomerg.com, the very reason that Meta acquired Kustomer was "***part of Meta's plan to profit from private chats.***"  See https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review#xj4y7vzkg (last visited Mar. 3, 2023).  As Bloomberg explained, "Kustomer builds software so that businesses can manage customer messages from multiple services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger. Meta hopes businesses will use WhatsApp, which has more than 2 billion monthly users, in lieu of other forms of customer communication, like email or 1-800 numbers." *Id*.

15. So how does it work?  ***First***, Facebook generates revenue for Meta by

selling advertising space on its website based upon its ability to identify user interests. ***Second***, Meta identifies user interests by secretly monitoring "offsite" user activity, such as website chat communications like those at issue here – because those conversations are intercepted and monitored by its subsidiary, Kustomer. ***Third and finally***, after Meta harvests the Kustomer chat transcripts for valuable data, Meta's brands like Facebook bombard the unsuspecting website visitor with targeted advertising.

16. Kustomer's code is imbedded in Defendant's Website by using what is known as an "iFrame." An iFrame, also known as Inline Frame, is code that loads another website (in this case Kustomer) inside of another web page (Boscov's Website). The Kustomer iFrame is visible on the left-hand side of the screenshot below, taken from Boscov's html as displayed on a web browser:

```
▼ ☁ www.boscovs.com                    throw new Error("Getting tracking token
    ▪ (index)                          }
  ▶ ☐ cto_sub_ifr_px (:)               }() || ""
  ▶ ☐ cookieStorage.html                .n = new Headers({
  ▼ ☐ kustomer-ui-sdk-iframe (about:s     "Content-Type": "application/json",
    ▶ ☁ (no domain)                      "x-kustomer": "kustomer",
  ▼ ☁ cdn.kustomerapp.com                "x-kustomer-client": "chat-web",
    ▶ ▪ chat-web                         "x-kustomer-tracking-token": t,
  ▼ ☁ chat-web                           credentials: "include"
                                       });
                                       return So(So({}, e), {}, {
                                         headers: n
                                       })
                                       }(1);
```

The highlighted text on the right-hand side indicates that Kustomer transmits communications from Boscovs.com to its own site, then stores them by using a .json file, which is commonly used to store data. The highlighted text also indicates that Boscov's allows the "kustomer-tracking token" which enables Kustomer to track users even after they have stopped using the chat on the Website.

17. Through the preceding acts, Kustomer can freely boast that it will "Transform your support center into a profit generator." *See* https://www.kustomer.com/product/customer-service/ (last visited Mar. 2, 2023).

18. To summarize: (1) Defendant enables Kustomer to intercept, record, and eavesdrop upon private chat conversations with customers; (2) Kustomer harvests

valuable data from those chat transcripts and tracks users after use of the chat; and (3) Kustomer's parent, Meta, then uses that data to bombard people with targeted advertising. In other words, Kustomer's monetization, use of, and interaction with the data it is able to gather through the chat feature in real time makes it more than a mere "extension" of Defendant.

19. Given the nature of Defendant's business, visitors may share sensitive personal data and personally identifying information with Defendant via the Website chat feature. Visitors would be shocked and appalled to know that Defendant secretly records those conversations and allows a third party to eavesdrop on them in real time under the guise of "data analytics."

20. In the July 2022, Plaintiff visited Defendant's Website. Plaintiff used a smart phone (a cellular telephone with integrated computers to enable web browsing). As such, Plaintiff's conversations with Defendant were transmitted from "cellular radio telephones" and/or "landline telephones" as defined by CIPA. Cal. Penal Code § 632.7(a).

21. By definition, Defendant's chat communications from its website are transmitted to website visitors by either cellular telephony or landline telephony. *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited Feb. 27, 2023).

22. Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting a third party – Kustomer – to intercept and eavesdrop on the conversations in real time, and then use users' data for Kustomer's own gain.

23. Defendant did not obtain Plaintiff's or the Class members' express or implied consent to allow Kustomer to eavesdrop on visitor conversations, nor did Plaintiff or Class members know at the time of the conversations that Defendant was secretly allowing third parties to eavesdrop on them.

## CLASS ALLEGATIONS

24.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

25.     NUMEROSITY: Plaintiff does not know the number of Class members but believes the number to be in the thousands, if not more. The exact identities of Class members may be ascertained by the records maintained by Defendant.

26.     COMMONALITY: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

   a.  Whether Defendant aided and abetted a third party in eavesdropping on such communications;
   b.  Whether Plaintiff and Class members are entitled to statutory penalties; and
   c.  Whether Class members are entitled to injunctive relief.

27.     TYPICALITY: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

28.     ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

29.  SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## FIRST CAUSE OF ACTION

## Violations of the California Invasion of Privacy Act

## Cal. Penal Code § 631

30.  Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section".

31.  Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of

all parties to the communication.' Cal. Penal Code § 631(a)." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

32. The software embedded on Defendant's Website to eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

33. At all relevant times, Defendant intentionally enabled, aided, and abetted Kustomer to eavesdrop upon class member's conversations.

34. Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's actions.

35. Defendant's conduct violates Cal. Penal Code § 631(a), entitling Plaintiff and Class members to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

36. Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

37. Plaintiff and the class members communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

38. Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

39. As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

40.     As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

41.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff and Class members to injunctive relief and statutory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Reasonable attorneys' fees and costs; and
7. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  March 3, 2023            PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, I electronically filed the foregoing **SECOND AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell