John S. Purcell (SBN 158969)
Lynn R. Fiorentino (SBN 22691)
Adam D. Bowser (*admitted pro hac vice*)
Douglas E. Hewlett, Jr. (SBN 293438)
**ARENTFOX SCHIFF LLP**
555 West Fifth Floor, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401
Email:   john.purcell@afslaw.com
             lynn.fiorentino@afslaw.com
             adam.bowser@afslaw.com
             douglas.hewlett@afslaw.com

Attorneys for Boscov's, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BOSCOV'S, INC.,<br><br>        Defendant. | Case No.  22-CV-01434-SSS-KK<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:       November 24, 2023<br>Time:      2:00 p.m.<br>Judge:    Hon. Sunshine S. Sykes<br>Courtroom:  2 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:22-cv-01434- SSS-KK

DEF.'S MOTION TO DISMISS

AFDOCS:199015730.1

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................... 1

STATUTORY FRAMEWORK ................................................................................ 2

STANDARD OF REVIEW ...................................................................................... 5

ARGUMENT ............................................................................................................ 6

**A.** Plaintiff's Boilerplate And Conclusory Allegations Fail Basic Notice Pleading Requirements ................................................................................... 6

**B.** Boscov's Cannot Be Liable Under Section 631 As A Party To The Communication As A Matter Of Law .......................................................... 8

**C.** Kustomer Is Still An Extension Of Boscov's In Any Event ........................ 9

**D.** Plaintiff Fails To Plead The Essential Elements Of Aiding And Abetting, Nor Can She Allege Kustomer Is A "Person" Subject To CIPA ........................................................................................................... 11

**E.** Plaintiff Fails To Plead That Any Actual Interception Occurred ............... 14

**F.** Plaintiff's Claim Under Section 632.7 Is Facially Inapplicable To Website Chat Communications ................................................................... 18

**G.** CIPA Cannot Survive First Amendment Scrutiny ..................................... 20

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:22-cv-01434- SSS-KK

- i -

DEF.'S MOTION TO DISMISS

AFDOCS:199015730.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

2020 WL 5239856, at *4 (C.D. Cal. Aug. 3, 2020) ...................................................... 6

2023 WL 1788553, *4 ...................................................................................................... 16

2023 WL 2469630, *8-10 .............................................................................................. 15

57 Cal. 4th 622 (2013) ..................................................................................................... 4

*Adler v. Community.com, Inc.,*
   2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ................................................ 8, 15

*Aljindi v. United States,*
   No. CV-20-796-PSG-DFMX, 2021 WL 750835 (C.D. Cal. Feb. 16, 2021) ................................................................................................................ 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................... 5, 6, 7, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................... 5

*Byars v. Hot Topic,*
   No. 22-1652-JGB-KKX, 2023 WL 2026994 .........................................*passim*

*Campbell v. Facebook,*
   77 F. Supp. 3d 836 (N.D. Cal. 2014)................................................ 16, 17, 19

*Cline v. Reetz-Laiolo,*
   329 F. Supp. 3d 1000 (N.D. Cal. 2018)............................................... 15

*Domondon v. First Franklin,*
   2016 WL 7479399 (C.D. Cal. June 23, 2016)........................................... 6

*Eminence Cap., LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003) ......................................................... 1

*Flanagan v. Flanagan,*
   27 Cal.4th 766 (2002)....................................................................... 19

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:22-cv-01434- SSS-KK

- ii -

DEF.'S MOTION TO DISMISS

AFDOCS:199015730.1

*Garcia v. Build.com*,
  Case No. 22-cv-01985-DMS, 2023 WL 4535531 (S.D. Cal. July 13,
  2023) ........................................................................................................... 2

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................... 10, 11

*Grant v. Aurora Loan Servs., Inc.*,
  736 F.Supp.2d 1257 (C.D. Cal. 2010) ................................................. 13

*Hammerling v. Google, LLC*,
  CIV No. 21-9004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1,
  2022) ......................................................................................................... 16

*Hayes v. Cnty. of San Diego*,
  658 F.3d 867 (9th Cir. 2011) .................................................................. 4

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ............................................................... 14

*Leason v. Berg*,
  927 F.2d 609 (9th Cir. 1991) ............................................................... 11

*Licea v. Caraway Home Inc.*,
  No. 22-CV-1791-JGB-SHKX, 2023 WL 1999496 (C.D. Cal. Feb.
  9, 2023) ...................................................................................................... 1

*Licea v. Cinmar*,
  2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) .................................. 2, 15, 19, 20

*Licea v. Vitacost.com, Inc.*,
  Case No. 22-CV-1854-RSH, 2023 WL 5086893 (S.D. Cal. July 24,
  2023) ......................................................................................................... 2

*Lindsay-Stern v. Garamszegi*,
  2016 WL 11745948 (N.D. Cal. Oct. 13, 2016) ................................... 15

*Martin v. Sephora*,
  Case No. 1:22- cv-01355-JLT, 2023 WL 2717636 (E.D. Cal. Mar.
  30, 2023) .................................................................................................... 2

*Membrila v. Receivables Performance Mgmt., LLC*,
  No. 09-cv-2790, 2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ........... 8

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS:199015730.1

*Montantes v. Inventure Foods*,
   No. CV-14-1128-MWF RZX, 2014 WL 3305578 (C.D. Cal. July 2,
   2014) ............................................................................................. 5, 18

*NovelPoster v. Javitch Canfield Grp.*,
   140 F.Supp.3d 938 (N.D. Cal. 2014) .................................................. 15

*Pena v. GameStop, Inc.*,
   Case No. 22-cv-1635 JLS, 2023 WL 3170047 (S.D. Cal. Apr. 27,
   2023) ..................................................................................................... 2

*People v. Carella*,
   191 Cal.App.2d 115 (1961) .................................................................. 16

*People v. Cho*,
   No. E049243, 2010 WL 4380113 (Cal. Ct. App. Nov. 5, 2010) ......... 4, 16

*People v. McCallum*,
   55 Cal. App. 5th 202, 269 Cal. Rptr. 3d 336 (2020) .......................... 13

*People v. Nakai*,
   183 Cal. App. 4th 499, 107 Cal. Rptr. 3d 402 (2010) ...................... 4, 16

*Powell v. Union Pac. R. Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................... 4, 9

*Project Veritas v. Schmidt*,
   72 F. 4th 1043 (9th Cir. July 3, 2023) ............................................... 20

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
   884 F.3d 812 (9th Cir. 2018) ................................................................. 3

*Rogers v. Hedgpeth*,
   320 Fed.Appx. 815 (9th Cir. 2009) ............................................... 11, 15

*Rosenow v. Facebook, Inc.*,
   No. 19-cv-1297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ........... 14

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021) ............................................................... 5, 18, 19

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................... 12

*Tavernetti v. Superior Court*,
   22 Cal.3d 187 (1978) .................................................................. 2, 3, 9

*Valenzuela v. Keurig Green Mountain, Inc.*,
   Case No. 22-cv-09042-JSC, 2023 WL 3707181 (N.D. Cal. May 24,
   2023) ................................................................................................ 2

*In re Vizio Inc. Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................... 8, 14

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (Ct. App. 1979) ............................................ 4, 9

*Williams v. What If Holdings, LLC*,
   CIV No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22,
   2022) .............................................................................................. 11

**Statutes**

Cal. Pen. Code § 632(b) ...................................................................... 13

Cal. Penal Code § 7 ............................................................................. 13

California Consumer Privacy Act ........................................................... 2

CIPA, the Wiretap Act ......................................................................... 14

federal Wiretap Act ............................................................................. 15

Penal Code Sections 630, 631, 632, and 632.7 ...................................... 2

Penal Code section 632.7… ................................................................. 19

Privacy Act, Sections 631 and 632.7 ..................................................... 2

Wiretap Act ......................................................................................... 16

# **INTRODUCTION**

Plaintiff and her counsel's attempts to criminalize the ubiquitous website chat feature under a Cold War-era wiretapping statute have hit several major roadblocks, not least of which was this Court's most recent holding that Plaintiff's "superficial" allegations "are insufficient to render plausible" her jurisdictional allegations, "**let alone that they suffered the purported CIPA violations Plaintiff describes**." Show Cause Order, Dkt. No. 56 at 4 (citing *Byars v. Hot Topic,* No. 22-1652-JGB-KKX, 2023 WL 2026994, at *5-6) (emphasis added).   While Plaintiff has supplemented her jurisdictional allegations, her "substantive" allegations remain just as superficial and inadequate as this Court and numerous others have already found.

In fact, in response to the Court's recent Show Cause Order, Plaintiff apologized "for falling short of the Court's pleading expectations" and promised "to exceed the Court's expectations in all future papers." Dkt. 57 at 1 n.1.  And what did Plaintiff immediately do when granted leave to amend her complaint against Boscov's *yet* again?  She added allegations about an entirely different company and its entirely different chat service provider that have no connection whatsoever to Boscov's or this case.   TAC, ¶ 28 n.4.   As Judge Bernal ruled months ago, "all reasonable people should agree" the practice of boilerplate pleadings has gone too far, and Plaintiff's counsel "blew past it."  *Licea v. Caraway Home Inc*., No. 22-CV-1791-JGB-SHKX, 2023 WL 1999496, at *6 (C.D. Cal. Feb. 9, 2023).   Enough is enough.   Plaintiff's repeated failures to do anything but engage in increasingly slipshod boilerplate pleading is sufficient grounds to dismiss this case for good. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("repeated failure to cure deficiencies" adequate grounds for dismissal with prejudice).

Ultimately the only material changes since Boscov's filed its last motion to dismiss (Dkt. No. 50-1), beyond even more courts dismissing Plaintiff's template

pleading, [1] is that the Ninth Circuit invalidated Oregon's indistinguishable "wiretapping" statute because it is facially unconstitutional.  *See* Dkt. No. 58 at 6-7 (citing *Project Veritas v. Schmidt*, 72 F. 4th 1043 (9th Cir. July 3, 2023)).  And as Boscov's recently raised, the CIPA sections at issue here suffer from the exact same content-based infirmities that led the Ninth Circuit to invalidate Oregon's law. *Id.* The same result should be reached here as another ground to dismiss Plaintiff's claims with prejudice, in addition to the grounds that Boscov's previously advanced, detailed again below.

## STATUTORY FRAMEWORK

Plaintiff's claims arise under two distinct provisions of the California Invasion of Privacy Act, Sections 631 and 632.7. [2]  Boscov's reiterates here that it is necessary to put a finer point on the California Supreme Court's binding *Tavernetti* decision addressing its interpretation of Section 631 at the outset.  There, the court specifically held that Section 631 "prescribes criminal penalties for **three distinct and mutually**

---

[1]     *See, e.g.*, *Licea v. Vitacost.com, Inc.*, Case No. 22-CV-1854-RSH, 2023 WL 5086893, **3-4 (S.D. Cal. July 24, 2023) (rejecting as insufficient allegations— nearly identical to those here—that the third-party software used for the defendant's chat function was "integrated" with Meta and could sell customer data to Meta); *Garcia v. Build.com*, Case No. 22-cv-01985-DMS, 2023 WL 4535531, **5-6 (S.D. Cal. July 13, 2023) (rejecting similar claim); *Valenzuela v. Keurig Green Mountain, Inc.*, Case No. 22-cv-09042-JSC, 2023 WL 3707181, *4 (N.D. Cal. May 24, 2023) (same); *Pena v. GameStop, Inc*., Case No. 22-cv-1635 JLS, 2023 WL 3170047, **1, 3-4 (S.D. Cal. Apr. 27, 2023) (rejecting as insufficient allegations that the "recordings" were "share[d] . . . with Zendesk, a third party that publicly boasts about its ability to harvest highly personal data from chat transcripts for sales and marketing purposes"); *Licea v. Cinmar*, 2023 WL 2415592, **8-10 (C.D. Cal. Mar. 7, 2023) (rejecting similar claim); *Martin v. Sephora*, Case No. 1:22- cv-01355-JLT, 2023 WL 2717636, **12-13 (E.D. Cal. Mar. 30, 2023) (same).

[2]     Boscov's will not repeat here the statutory history and interplay between the California Consumer Privacy Act and Penal Code Sections 630, 631, 632, and 632.7, but incorporates its prior summary by reference.  *See* Dkt. 14 at 4-6.  For ease of reference, Boscov's also refers the Court to the chart containing Section 631's statutory text next to the California Supreme Court's interpretation of the corresponding provision, attached as Exhibit A to Dkt. No. 50-1.

1   **independent** patterns of conduct": "[1] intentional wiretapping, [2] willfully

2   attempting to learn the contents or meaning of a communication **in transit *over a***

3   ***wire***, and [3] attempting to use or communicate information obtained as a result of

4   engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22

5   Cal.3d 187, 192 (1978)) (emphasis added). Thus, courts are respectfully

6   misinterpreting, if not rewriting, this decision to find that there are ***four*** patterns of

7   conduct that are actionable – i.e., by creating a *separate* free-ranging "aiding and

8   abetting" cause of action distinct from the third category above.

9       **But that is not how the California Supreme Court interprets the statute**,

10  and its interpretation is **binding** on federal courts.[3]  Indeed, that is not even how

11  ***Plaintiff*** interprets the statute, as she also condenses the third prong of Section 631

12  as encompassing any "aiding and abetting" activity. *See* TAC ¶ 47.  Put differently,

13  federal courts more recently have been asking the *wrong* question: can a defendant

14  "aid and abet" – conduct subsumed in pattern 3 – "attempting to learn the contents

15  or meaning of a communication in transit over a wire" – or pattern 2 conduct?  This

16  analysis thus conflates what the California Supreme Court has ruled, again, are "three

17  distinct and **mutually independent** patterns of conduct" – or by making pattern 3

18  conduct *dependent* on pattern 2 conduct.

19      Point being, the actual question this Court needs to address under the third **and**

20  **final** prong of Section 631(a), as interpreted by the California Supreme Court, is

21  whether Plaintiff can state a claim that Boscov's is "attempting to use or

22  communicate information obtained as a result of engaging in either of the two

23  previous activities." *Tavernetti*, 22 Cal.3d 187, 192 (1978)).  **This should be the only**

24  **remaining question.**  And critically, given CIPA's express purpose of preventing

25

26  _____

    [3]      "When interpreting state law, federal courts are bound by decisions of the

27  state's highest court." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812,

    820 (9th Cir. 2018) (quoting *Ariz. Elec. Power Co-Op., Inc. v. Berkeley*, 59 F.3d

28  988, 991 (9th Cir. 1995)).

secret eavesdropping, Section 631 consistently "has been held to apply **only** to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (emphasis added); *see also Powell v. Union Pac. R. Co*., 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he **cannot be liable as a matter of law**"; further ruling by extension that a party to conversation **cannot "be liable** for aiding or conspiring with a third party to enable that party to listen in on the call.") (emphasis added).

Section 632, by contrast, restricts any party from recording a confidential communication and then further passing it on. *See People v. Nakai,* 183 Cal. App. 4th 499, 519, 107 Cal. Rptr. 3d 402, 418 (2010) (analyzing whether to exclude recorded chat transcripts under Section 632, and not Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user");[4] *see also People v. Cho,* No. E049243, 2010 WL 4380113, at *5 (Cal. Ct. App. Nov. 5, 2010) (online "chat conversations do not qualify as confidential communications for purposes of Section 632" and as result, holding that such conversations are not protected under CIPA).

Finally, Section 632.7 was adopted to address an "**exclusive list** of five types of **calls** …: a communication **transmitted <u>between</u>** (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a

---

[4]     Federal district courts are also bound to follow the analysis of state appellate courts.  *See Hayes v. Cnty. of San Diego*, 658 F.3d 867, 870 (9th Cir. 2011), *certified question answered*, 57 Cal. 4th 622 (2013) ("In deciding an issue of state law, when 'there is relevant precedent from the state's intermediate appellate court, the federal court **must follow** the state intermediate appellate court decision") (emphasis added).  The fact that California state appellate courts have routinely analyzed chat "recording" complaints under Section 632, and not Section 631, should also end the Court's inquiry here.

cellular radio telephone. According to this list of included types of telephones, the communication **must have** a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone **on the other side**." *Montantes v. Inventure Foods*, No. CV-14-1128-MWF RZX, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014) (emphasis added).  Simply put, Section 632.7, does "not apply in the context of text-based communications on a website" when there is admittedly no telephone on the defendant's side. *Hot Topic, Inc.*, 2023 WL 2026994, at *11 (C.D. Cal. Feb. 14, 2023).  To be sure, Boscov's is mindful of the Court's prior rulings in *Goodyear* and *Old Navy*, but as Boscov's has already explained, the Court's analysis in these cases was respectfully incorrect because the Court was seemingly conflating cases addressing claims under Section *632*, <u>not</u> *632.7*.  *See* Dkt. No. 55, ¶¶ 5-8. Boscov's anticipates that this clarification, coupled with the California Supreme Court's express holding that Section 632.7 applies to "'a communication transmitted **between**' a cellular or cordless telephone ***and another telephone***"[5] should lead the Court to adopt the otherwise consistent view that a Section 632.7 claim has no application to smartphone-to-website communications.

## **<u>STANDARD OF REVIEW</u>**

A plaintiff must state "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) A claim has "facial plausibility" only if the plaintiff pleads **facts** – **not conclusions** – that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In resolving a 12(b)(6) motion, the Court must follow a two-pronged approach.  First, the Court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by **mere conclusory statements**, **do not suffice**." *Iqbal*, 556 U.S. at 678.  Nor must the Court "'accept as true a legal conclusion couched as

---

[5]     *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021) (emphasis added).

a factual allegation.'" *Id*. at 678-80 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.   This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Nat.-Immunogenics Corp.*, 2020 WL 5239856, at *4 (C.D. Cal. Aug. 3, 2020).[6]

## ARGUMENT

### A.   Plaintiff's Boilerplate And Conclusory Allegations Fail Basic Notice Pleading Requirements

As the Court is aware, Judge Bernal previously chastised Plaintiff's counsel in indistinguishable cases for "drumm[ing] up these lawsuits" and his practice of "copying and pasting from boilerplate pleadings." *Hot Topic*, 2023 WL 2026994 at *4.   As the court noted, "[i]nitiating **legitimate litigation** generally requires a considerable expenditure of time" as "a plaintiff must plead **specific facts** arising out of a **specific encounter** with a **specific defendant**." *Id.* (emphasis added).

Nothing has changed since this ruling.   If there was *any* validity to the conclusory Meta conspiracy theory that (now) underpins all of these cases,[7] Plaintiff

---

[6]      As previously briefed, California district courts particularly disfavor coordinated cookie-cutter lawsuits such as this one. *See, e.g., Domondon v. First Franklin*, 2016 WL 7479399, at *5 (C.D. Cal. June 23, 2016) (dismissing complaint under Rule 8 where "[p]lainly this pleading was not carefully constructed" but "[i]nstead it appears to be a 'cut and paste' of similar complaints filed in other actions.").

[7]      It should be noted that Plaintiff's original Complaint was predicated on *Boscov's directly* "wiretapping" its own website, as Plaintiff presumably did not understand Boscov's could not be liable as a party to the alleged communication. As Plaintiff's litigation group has had complaint after complaint dismissed under prior template theories, their allegations have become more and more fantastical in their transparent attempts to match the third-party focus of the actual law at issue. But since they started this scheme immediately after *Javier* with the belief they

could easily allege "Plaintiff wrote to Defendant about X, Y and Z on such and such date, and then she began to receive targeted advertisements about X, Y and Z on such and such third-party sites." *That* type of allegation would at least *begin* to make a basic attempt to establish that third parties are somehow learning the *contents of her communications* with Defendant – the **very essence** of her CIPA claims.

Instead, Plaintiff's TAC is a hodgepodge of entirely conclusory allegations devoid of *any well-pled facts*.    Formulaic assertions that third parties are "eavesdropping" "during transmission and in real time" have never carried the day previously, and there is a reason for that: the Supreme Court has ruled lower courts **must disregard** allegations that are legal conclusions, even when they are disguised as "facts." *Iqbal*, 556 U.S. at 681.

By the same token, all of Plaintiff's allegations attempting to outline a conspiracy theory involving Meta and Facebook are entirely conclusory as well. TAC ¶¶ 27-32.  Plaintiff's new narrative is premised on a Bloomberg article behind a paywall that apparently states Meta acquired Kustomer because Meta supposedly has a "plan to make money off of its two messaging apps, WhatsApp and Messenger. Meta hopes businesses will use WhatsApp … in lieu of other forms of customer communication." TAC ¶ 30.  What conceivable relevance this has here **when no one is even using WhatsApp or Messenger** is never explained.  Plaintiff's additional allegations spring from this *non sequitur* to the unsupported assertion that "Meta harvests the Kustomer chat transcripts for valuable data, [and] Meta's brands like Facebook bombard the unsuspecting website visitor with targeted advertising." *Id.* ¶ 31.  Of course, Plaintiff provides absolutely no supporting factual allegations for these conclusory assertions – such as *how* Facebook allegedly "bombarded" her "with targeted advertising," or what "valuable data" Kustomer harvested from her

could simply type "returns" to commence these suits, without more, they will never be able to properly allege *the specific facts arising out of a specific encounter with a specific defendant* – without revealing how manufactured these claims are.

chat, if any, with Boscov's. *Id.*

At bottom, allowing implausible and conclusory wiretapping complaints like Plaintiff's to proceed to discovery creates a direct and irreconcilable conflict with existing precedent from this District regarding the pleading requirements in these cases. *See*, *e.g.*, *In re Vizio Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Adler v. Community.com, Inc.,* 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (dismissing plaintiff's Section 631 claim **with prejudice** because the two text messages at issue were first received at the destination address – that **is this case**). The only difference between this case, *Vizio* and *Adler* is that Plaintiff's allegations are *even more* conclusory and self-defeating. Boscov's respectfully submits that the Court need only follow through on its prior holding that Plaintiff's allegations are entirely "superficial" and dismiss these same conclusory allegations – for good.

## B. Boscov's Cannot Be Liable Under Section 631 As A Party To The Communication As A Matter Of Law

As the Court already recognized in its previous order, Boscov's cannot be liable under the second prong of Section 631 for "eavesdropping" because it was a party to the purportedly "intercepted" communication. That is, California courts have long held that Section 631 applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Membrila v. Receivables Performance Mgmt., LLC,* No. 09-cv-2790, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (ruling that party to conversation could not have intercepted or eavesdropped, because only a third party **listening *secretly* to a *private* conversation** can do so).

And as Boscov's detailed above, under the California Supreme Court's *binding* interpretation of Section 631(a), and as recognized by Plaintiff (TAC ¶ 47),

the **only** remaining question should be whether Plaintiff can state a claim under the third prong.  That is, can Boscov's be "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal.3d 187, 192 (1978)).  The short answer is, no, this should be impossible. Boscov's is not allegedly violating the first activity (wiretapping telephone lines), and Boscov's legally cannot obtain information in violation of the second activity (eavesdropping), because it is a party to the communication.  Indeed, the Court already dismissed this theory **with prejudice**.  Boscov's therefore cannot be "engaging in either of the two previous activities," and a violation of the third prong of Section 631 by Boscov's is logically foreclosed.  *See Powell,* 864 F. Supp. 2d at 955 (holding it is legally impossible for party to communication to fall within scope of Section 631); *Warden*, 99 Cal.App.3d 805, (1979) ("[S]ection 631 ... has been held to **apply *only* to eavesdropping by a third party**") (emphasis added).  Boscov's respectfully submits that this is the only proper analysis given the California Supreme Court's holding in *Tavernetti*.

Thus, as a conceptual matter, analyzing whether Boscov's can "aid and abet" any "attempt[] to learn the contents or meaning of a communication in transit over a wire" is, in Boscov's view, a fundamental misinterpretation of the California Supreme Court's binding *Tavernetti* decision.  *Tavernetti*, 22 Cal.3d 187, 192 (1978).  It takes what should be **"mutually independent** patterns of conduct" and conflates them into *mutually dependent* patterns that effectively combine the second and third prongs.  *Id.*  Boscov's therefore respectfully submits that under the analytical framework mandated by *Tavernetti*, the Court's analysis should be simple: Boscov's legally cannot violate Section 631 as party to the communication.

## C.     Kustomer Is Still An Extension Of Boscov's In Any Event

Even if the Court were to analyze Plaintiff's latest complaint under the same "derivative liability" standards and whether Kustomer is alleged to be harvesting data for its own use independent of its services to Boscov's, Plaintiff's new conclusory

allegations do not plausibly take this case out of the *Graham v. Noom* paradigm adopted by the Court.  *See* Dkt. 47 at 5 (adopting reasoning "[c]onsistent with the reasoning of cases like *Graham v. Noom, Inc.*").  That is, Judge Beeler's decisions were predicated on analyzing whether plaintiffs were alleging facts sufficient to plausibly conclude that the software provider's "aggregation of data [was] for resale" to third parties, i.e., whether the vendor "intercepted and used the data itself" for its own purposes.  *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).

Leaving aside the entirely conclusory and vague nature of Plaintiff's new allegations – which start from the *non sequitur* of "Meta hop[ing] businesses will use" an entirely different messaging service, TAC ¶ 30, and conclude with the bogeyman of unspecified "targeted advertising" *Id.* ¶ 31 – Plaintiff nowhere even hints that this unsubstantiated activity is occurring on behalf of any entity *other than Boscov's*.  Indeed, Plaintiff expressly incorporates Kustomer's website to make clear Kustomer "boast[s] that it will '[t]ransform [Boscov's] support center into a profit generator."   TAC   ¶  33,  citing   https://www.kustomer.com/product/customer-service/.[8]   Plaintiff is clearly taking this irrelevant discussion out of context, and otherwise provides absolutely no specific factual support that *anyone*, including herself, was "bombarded" with "targeted advertising" as a result of chatting with Boscov's customer service department.  Nevertheless, this unsubstantiated narrative is ultimately self-defeating because the only aspect of this theory that is remotely clear is that Kustomer is acting directly for the benefit of Boscov's.[9]  *Id.*

---

[8]     To be clear, this elided quote comes from a section related to "bulk messaging" entirely irrelevant to this case.  It states in full "Transform your support center into a profit generator **by bulk messaging specific customer segments** based on your unique data, such as orders, location or CSAT, to proactively mitigate issues and reengage dissatisfied customers."

[9]     To argue otherwise would be beyond implausible; it would be absurd.  No rational retailer like Boscov's would allow Kustomer to harvest data from Boscov's chat transcripts with its customers – let alone "in real time and in transit" – and then

In the final analysis, Plaintiff's new allegations do not remotely, let alone plausibly, take this case out of this Court's, Judge Fitzgerald's or Judge Bernal's previous holdings. *See, e.g., Hot Topic*, 2023 WL 2026994 at *10 ("Here, as in *Williams* and *Graham*, Plaintiff does not allege a single fact that suggests the third-party 'intercepted and used the data itself.'" (*citing Williams v. What If Holdings, LLC*, CIV No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Plaintiff has once again pled herself out of court by alleging that Boscov's vendor is acting as Boscov's vendor.

### D. Plaintiff Fails To Plead The Essential Elements Of Aiding And Abetting, Nor Can She Allege Kustomer Is A "Person" Subject To CIPA

Notably absent from Plaintiff's theory that Kustomer is somehow allowing Meta to "harvest[] the Kustomer chat transcripts for valuable data" so that "Facebook [can] bombard the unsuspecting website visitor with targeted advertising," TAC ¶ 30, is any suggestion that *Boscov's* is aware of this conclusory scheme. *See, generally*, TAC. This failure is independently fatal to Plaintiff's claim against Boscov's because a defendant's specific knowledge of the underlying criminal acts *and* substantial assistance in such acts are essential elements to any "aiding and abetting" claim under California penal law. *Rogers v. Hedgpeth*, 320 Fed.Appx. 815, 817 (9th Cir. 2009) (quoting *People v. Mendoza*, 18 Cal. 4th 1114, 1123, 959 P.2d 735, 739 (1998)); *see also Leason v. Berg*, 927 F.2d 609 (9th Cir. 1991) ("Two **essential elements** in an aiding and abetting claim are: (1) the defendant must have had **actual knowledge** of the wrong and of his role in furthering it; and (2) the defendant must have substantially assisted in the wrong.") (emphasis added).

Of course, there is a good reason Plaintiff never alleges Boscov's has

---

use that information to perform targeted advertising for *other competing companies*. This is the type of case the Supreme Court must have had in mind when it directed the lower courts to use basic common sense to screen out nonsensical complaints.

knowledge of this purported scheme: it is made up out of whole cloth.  As Boscov's previously addressed after Plaintiff expressly incorporated Kustomer's legal terms into the record,[10] Kustomer makes clear in its terms that as part of providing the underlying communication service at issue, it has access to the data provided by Boscov's or website visitors communicating with Boscov's "solely as necessary for us to provide the Platform in accordance with the terms and conditions of these Terms and any Order."[11]  And one of these conditions is that Kustomer will "comply with all applicable state, federal and international laws, regulations, notices, and guidelines relating to information privacy (collectively, 'Data Privacy Laws')" – expressly including California privacy law.  Kustomer also unequivocally represents that "[w]e **do not 'sell'** Client Users' or Customer's Personal Data as currently defined under the CCPA, meaning that **we also do not** rent, **disclose, release, transfer**, make available or otherwise communicate that **Personal Data to a third party** for monetary or other valuable consideration."[12]  Simply put, Plaintiff's hasty attempt to backfill her misreading of *Javier* is not supported by any specific allegations for a reason.  Given this, it is not surprising that she fails to properly plead an aiding and abetting claim under California penal law – as Boscov's cannot have knowledge of what is *not* happening.  This alone is fatal to her claim.

Separately, Kustomer is also indisputably an LLC. It is also beyond dispute that the California Legislature has defined a "person" in the Penal Code to only embrace "a corporation as well as a natural person," and has not updated the laws at

---

[10]    *See* ECF No. 22 at 8-9; *see also* ECF No. 40 at 8-11.  Courts "need not…accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Indeed, "a plaintiff can…plead himself out of a claim by including unnecessary details contrary to his claims." *Id.* (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)).  This is precisely the case here.

[11]    *See* Kustomer's Terms of Service cited by Plaintiff, located at https://www.kustomer.com/legal/terms/.

[12]    *See* Kustomer Product Privacy Statement, located at https://www.kustomer.com/privacy/statement/ (emphasis added).

issue to include additional forms of business, such as LLCs.[13]  *See* Cal. Penal Code § 7.  If Plaintiff intends to enforce a Cold War-era telephone wiretapping criminal statute against modern website chat features, instead of the actual laws the Legislature recently enacted to comprehensively address online privacy issues (the CCPA, as amended by the CPRA), she needs to ensure that this old law has kept up with the times.  It has not.  Kustomer does not fall within its scope because it is not a "person" under the statute.[14]  It necessarily follows that Plaintiff will never be able to establish that Boscov's is "aiding and abetting" "any *person or persons* to

---

[13]    Indeed, the Legislature *has* updated certain CIPA statutory sections to include LLCs and other business forms within the scope of "persons" subject to those *particular* sections.  For example, Section 632 provides in relevant part that "[*f*]*or the purposes of* __this section__, 'person' means an individual, business association, partnership, corporation, limited liability company, or other legal entity." Cal. Pen. Code § 632(b) (emphasis added).  Clearly, the Legislature knows how to broaden the scope of entities subject to CIPA – *if* it wishes to do so.  And it is a basic tenet of statutory interpretation that the Legislature is presumed to intend a distinction when it uses particular language in one section, but excludes it in another.  *See, e.g., People v. McCallum*, 55 Cal. App. 5th 202, 212, 269 Cal. Rptr. 3d 336, 342–43 (2020).

[14]    The Court can and should take judicial notice of Kustomer's status as an LLC.  *See Grant v. Aurora Loan Servs., Inc.*, 736 F.Supp.2d 1257, 1265 (C.D. Cal. 2010) (taking judicial notice of party's LLC status and collecting cases doing same).  *See* Delaware Department of State, Division of Corporations, available at https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx.

| Entity Details | |
|---|---|
| **THIS IS NOT A STATEMENT OF GOOD STANDING** | |
| File Number: 5802714 | Incorporation Date / Formation Date: 8/14/2015 (mm/dd/yyyy) |
| Entity Name: KUSTOMER, LLC | |
| Entity Kind: Limited Liability Company | Entity Type: General |
| Residency: Domestic | State: DELAWARE |

1    unlawfully do" anything relevant to Plaintiff's claims. TAC, ¶ 34.

2         At bottom, Plaintiff never alleges that Boscov's *knowingly* aided and abetted
3    Kustomer's purported violations of the statute, nor does she ever allege that
4    Kustomer is a "person" even capable of violating the law.  Either failure
5    independently warrants dismissal, and because amendment would be futile, dismissal
6    should be with prejudice.

7    **E.    Plaintiff Fails To Plead That Any Actual Interception Occurred**

8         Plaintiff's Section 631 claim independently fails because she does not
9    plausibly allege that any *interception* of her communication *in transit* **on a wire**
10   plausibly occurred.  Rather, what she actually complains of is that any chat
11   communications with Boscov's reaches Boscovs.com, and then at most, Kustomer
12   then "transmits communications from Boscovs.com to its own site, then stores them
13   by using a .json file, which is commonly used to store data."  TAC ¶ 32.  In other
14   words, the party to the communication (Boscov's) is receiving the communication
15   first, and *then* it is (allegedly) storing communications with its chat service provider.
16   For purposes of Section 631, Boscov's website is the *end point* of the communication,
17   which does not implicate Section 631's condition that the recording be "in transit,"
18   let alone *on a wire* **before** the communication reaches Boscov's website.

19        Plaintiff's conclusory – and counterfactual – claims of "interception" are thus
20   insufficient as a matter of law.  *See In re Vizio Inc. Consumer Priv. Litig.,* 238 F.
21   Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing **much more detailed** and
22   supported allegations of interception); *see also Rosenow v. Facebook, Inc.,* No. 19-
23   cv-1297, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting motion to
24   dismiss federal wiretap claim where allegations that communications were
25   intercepted "in transit" were "conclusory").

26        In analyzing the federal analogue to CIPA, the Wiretap Act, the Ninth Circuit
27   held that intercepting a communication means to "to stop, seize, or interrupt in
28   progress or course **before arrival**." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868,

878 (9th Cir. 2002) (emphasis added).[15] It is conceptually impossible under this definition for a party to a communication to "intercept" that same communication at its destination – here, Boscov's website, or for Kustomer to intercept it *after* its arrival at Boscov's website.   The court in *Rogers* fully embraced this conclusion as well under Section 630: "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received."   *Rogers*, 52 Cal. App. 3d at 898.   **The Court is bound by this state appellate court ruling.**   This is also the express holding of *Adler*, which Plaintiff has cited previously, and compels dismissal of Plaintiff's claim *with prejudice.   Adler*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (holding interception in transit was impossible because "Plaintiffs sent text messages to a celebrity's Community number, and the device paired with that number 'received the information, **effectively completing the communication**.'") (emphasis added).

Put differently, the communication, if any, Plaintiff had on Boscov's website reached Boscov's – the intended recipient – there is no dispute about that.   Again, **under binding Ninth Circuit and state court precedent**, interception cannot occur unless defendants somehow "halt the transmission of the messages to their intended recipients."   *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 952 (N.D. Cal. 2014).   Conversely, "once an [electronic communication] has been received by the destination server, a communication becomes 'stored' **and contemporaneous interception is no longer possible**.").   *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (N.D. Cal. Oct. 13, 2016) (emphasis added); *see also American Eagle*, 2023 WL 2469630, *8-10 (dismissing indistinguishable allegations that chat service provider "is able to gather the chat feature in real time" as merely "conclusory allegations" insufficient to meet *Twobly/Iqbal* pleading standards); *Cinmar*, 2023

---

[15]     "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."   *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018).

WL 2415592, *9-10 (same)[16]

What Boscov's does with a communication *after* Boscov's receives it is legally irrelevant under Section 631.  Indeed, Section 632 would be entirely superfluous if recording a communication at its end point was also an "interception in transit" under Section 631.  It is not surprising, therefore, that California courts have consistently analyzed CIPA claims concerning "recording" chat transcripts under Section 632, and not 631.  *See Nakai,* 183 Cal. App. 4th at 519; *see also Cho,* 2010 WL 4380113, at *5.  And as noted above, federal district courts are required to defer to California state courts in their interpretation of CIPA.

To be sure, Boscov's is mindful that the Court previously found that the "allegation that user's messages were intercepted in transit is to be taken as true at this stage of the case." *Goodyear*, 2023 WL 1788553, *4 (citing *Campbell v. Facebook*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014)).  But respectfully, there is no comparison between Plaintiff's TAC here and the incredibly detailed, 29-page complaint underlying the *Campbell* decision, which contained meticulous discussion of the underlying investigations plausibly demonstrating Facebook was tracking private messages *outside its own network* **when it was not a party to the communication**.  *See Campbell v. Facebook*, 4:13-cv-05996, Consolidated Amended Class Action Complaint (Dkt. No. 25), ¶¶ 15-58.

Even courts from that district are quick to distinguish *Campbell*.  For example, in *Hammerling v. Google, LLC*, CIV No. 21-9004-CRB, 2022 WL 17365255, n. 15 (N.D. Cal. Dec. 1, 2022), Judge Breyer recently dismissed a CIPA complaint against

---

[16]    *See also People v. Carella*, 191 Cal.App.2d 115, 137-38 (1961) (holding 'no interception occurred' under predecessor statutes to Wiretap Act and Section 631 where stenographer from DA's office answered telephone and created transcripts of 45 calls: "no wire tapping or other connecting method was used' and 'messages sent were received in the ordinary course **over the means of transmission provided**.") (emphasis added).

Google.  In so doing, he expressly held that "[t]his case is distinguishable from *Campbell v. Facebook* … where the parties alleged the mechanisms by which the defendant allegedly intercepted the messages at issue. … The amended complaint, by comparison, fails to allege any process by which Google intercepts this data in transit." *Id.* at n. 15.  With all due respect to the Court, there are absolutely no factual allegations in these complaints detailing any mechanism by which third parties supposedly "eavesdrop in real time and during transmission" – particularly when the admitted context is that the Plaintiff is already communicating at the **destination website**.  Plaintiff's new conclusory allegations that Meta *later* "harvests the Kustomer chat transcripts" at some unspecified time removes all doubt that this is not an actual "interception" case. TAC ¶ 31. Again, as the Ninth Circuit has ruled, interception must occur *before* the communication reaches its destination.

To put a finer point on it, the "eavesdropping" clause of Section 631(a) specifically entails "willfully attempting to learn the contents or meaning of a communication **in transit *over a wire***." Cal. Penal Code. § 631(a) (emphasis added). Plaintiff **nowhere alleges** that any entity is attempting to learn the contents of her communication while it is transiting some unspecified wire *before* reaching Boscov's website. The Court's brief discussion in *Goodyear* does not attempt to explain how any interception is plausible, let alone remotely possible, under these statutorily required circumstances. For good reason – Plaintiff never alleges any facts to establish the actual elements of the claim at issue.[17]

Ultimately, Plaintiff is attempting to dress up a Section 632 claim – which prohibits *recording confidential communications* without all parties' consent – as a Section 631 "wiretapping" claim – which applies to *third parties* intercepting private communications *in transit over a wire* **before** it arrives at Boscovs.com.  The latter scenario is not remotely this case.  After the communication reaches Boscov's

---

[17]    Put differently, "eavesdrop in real time and during transmission" is vacuous filler that is not even responsive to the specific conduct prescribed by the statute.

website, it becomes, at most, a Section 632 issue how Boscov's stores its (non-confidential) chat transcripts with its service provider. There can be no interception under these allegations, and Plaintiff's Section 631 claim should be dismissed on this independent ground with prejudice.

### F.   Plaintiff's Claim Under Section 632.7 Is Facially Inapplicable To Website Chat Communications

Plaintiff's claim under Section 632.7 is facially inapplicable to communications to Boscov's website.  Judge Fitzgerald thoroughly analyzed this distinct provision of CIPA in *Inventure Foods*, finding that by its plain terms, Section 632.7 exclusively applies to communications transmitted **between** "(1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone." *Id.* at 2014 WL 3305578, at *4 (further noting that under California law, "individualized proof is required under § 632.7 to 'determine what type of telephone was used to receive the subject call.'" (citation omitted)).

Simply put, there is no ambiguity in this statute.  "[O]nly [the] **types of phones** listed in the statute are included," and the "communication must have a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone **on the other side**." *Id.* (emphasis added).   And this interpretation is entirely consistent with the California Supreme Court's *binding* holding that Section 632.7 only applies to conversations *between* two (particular) phones. *LoanMe,* 11 Cal. 5th at 183.  That is admittedly not this case according to Plaintiff's own allegations. Indeed, Plaintiff alleges that she communicated with Boscov's website – which is not a telephone of any kind.  That *should* end the matter.

But as Boscov's is aware, the Court came to a different conclusion when presented with Goodyear's arguments.  Boscov's, however, is hopeful that Judge Bernal's and Judge Fitzgerald's detailed and thoughtful holdings as to why *Goodyear*

is erroneous and clearly "circumvent[s] the plain language of Section 632.7" will give the Court reason to reconsider, which the Court seems poised to do given the Show Cause Order.  Dkt. No. 56 at 4 (favorably citing *Hot Topic*, in which Judge Bernal held "*Goodyear*'s reasoning rests on the false premise that Goodyear was using a telephone at all: the allegations there, as here, make it abundantly clear that it was *not* using a telephone at all.") (emphasis in original).[18]  While Boscov's incorporates the analyses of *Hot Topic* and *Cinmar* in full, a shorter explanation is that the Court should not allow allegations establishing *half a claim* to proceed.  It is a basic requirement of pleading that a plaintiff "must adequately allege **all of the elements** of each of his claims and the legal basis of such claims with **sufficient**

_____

[18]      Like the *Campbell* decision discussed above, if the Court were to review the operative complaint in *McCabe*, it would easily show that the allegations at issue there were clearly distinguishable because the plaintiffs there were **specifically alleging two-way telephone conversations**: "Plaintiffs had a reasonable expectation that their telephone conversations with Defendant's employees and agents were, and would remain, private and confined **to the parties on the telephone**."  Sec. Am. Compl. ¶ 17 (Dkt. No. 54) (emphasis added).  That is clearly not this case, and why Judge Bernal was correct in holding *McCabe* is inapposite.  The same reasoning applies to *Flanagan v. Flanagan*, 27 Cal.4th 766, 771 (2002), where the California Supreme Court was clearly and expressly addressing a Section 632.7 claim in the context of recording voice conversations **between** a cellular phone and another phone:  "Michael testified that Honorine had recorded 27 telephone calls between him and his father.  He placed nine calls from a cellular phone."  At no point did the California Supreme Court ever hint at the possibility that the absence of a telephone on one end of the conversation would somehow be sufficient to state a claim under this statute. In fact, as the California Supreme Court more recently held in *Smith v. LoanMe, Inc.,* 11 Cal. 5th 183 (2021), "[u]nder Penal Code section 632.7…, it is a crime when a person 'without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted **between**' a cellular or cordless telephone **and another telephone**."  *Id.* at 187 (emphasis added).  This is the **first sentence** of the decision, and thus all precedent analyzing Section 632.7 needs to be analyzed in the context of whether communications are occurring *between* two phones.  That is not this case.  *See also* Dkt. No. 55, ¶¶ 5-8 (detailing cases that Court previously relied on were actually analyzing separate statute, Section 632, which has distinct elements).

1   **supporting facts**.” *Aljindi v. United States*, No. CV-20-796-PSG-DFMX, 2021 WL
2   750835, at *1 (C.D. Cal. Feb. 16, 2021) (emphasis added).

3          That is *not* this case.  Indeed, as a threshold matter, *Plaintiff* is admittedly doing
4   the “recording” otherwise actionable under the statute by allegedly writing on
5   Boscov’s website – and thus she is clearly trying to hold Boscov’s liable *for her own*
6   *actions*.  Put differently, she is effectively rewriting Section 632.7 by imposing an
7   obligation on Boscov’s to *delete* messages that Plaintiff herself recorded.
8   Recognizing the absurdity of applying Section 632.7 to written communications over
9   the Internet, Judge Fitzgerald sensibly held that this statute “does not extend
10  protection to communications over the internet.”  *Cinmar*, 2023 WL 2415592, *12.

11         Independently, and in the final analysis, Plaintiff alleges, at most, that she, and
12  she alone, was using a smart phone to engage in non-voice communications with a
13  website.  “Plaintiff admits that Defendant was **not using a telephone**, and thus her
14  second cause of action fails as a matter of law.  Because it would be futile to amend
15  the pleadings as to” her Section 632.7 claim, it should be dismissed with prejudice.
16  *Bryar*, 2023 WL 2026994 at 11 (emphasis added).

17         **G.    CIPA Cannot Survive First Amendment Scrutiny**

18         As Boscov’s noted above and has previously briefed, the Ninth Circuit has
19  invalidated a nearly identical state “wiretapping” statute as being facially
20  unconstitutional.  *See* Dkt. 58 at 5-7 (citing *Project Veritas*, 72 F. 4th at 1043).  Not
21  only does CIPA unconstitutionally discriminate in favor of communications
22  occurring over public utility networks, it is a content-based restriction that cannot
23  survive strict scrutiny *for the exact reasons* adopted in *Project Veritas*.  *Id.*  The
24  Court should similarly find CIPA is invalid and unenforceable for the same reasons.

25                              **<u>Conclusion</u>**

26         For the foregoing reasons, Defendant respectfully requests that Plaintiff’s
27  Third Amended Complaint be dismissed in its entirety with prejudice.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Dated:  October 27, 2023                **ARENTFOX SCHIFF LLP**

2

3                                            By: _Lynn R. Fiorentino_____

4                                            John S. Purcell
                                             Lynn R. Fiorentino
5                                            Adam D. Bowser
                                             Douglas E. Hewlett, Jr.
6                                            Attorneys for Defendant Boscov's, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28