1
2
3
4
5
6
7

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

8

## UNITED STATE DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11   ANNETTE CODY, individually and on
behalf of all others similarly situated,

12                          Plaintiff,

13           v.

14   BOSCOV'S, INC., a Pennsylvania
corporation; and DOES 1 through 25,

15   inclusive,

16                          Defendant.

17

18

19

20

21

Case No. 8:22-cv-01434-SSS-KK

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO
DISMISS PLAINTIFF'S THIRD
AMENDED CLASS ACTION
COMPLAINT**

[Request for Judicial Notice filed
concurrently herewith; [Proposed] Order
lodged concurrently herewith]

Date:          December 1, 2023
Time:          2:00 p.m.
Courtroom:    2
Judge:         Hon. Sunshine S. Sykes

22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT ............................................................................................. 2

    A. The TAC Plausibly Alleges that Defendant's Chat Provider
    Violated the Second and Third Clauses of Section 631(a) of
    the California Penal Code .................................................................. 2

        1. The TAC's Allegations About the Chat Provider's
        Conduct Are Plausible. ......................................................... 2

        2. Multiple Federal Decisions Have Recognized that a
        Third Party Software Provider Can Violate Section
        631(a). .................................................................................... 3

            a. The Court Should Follow the Ninth Circuit's
            Decision in *In re Facebook* .......................................... 4

            b. The Court Should Follow the Court's Decision
            in *Saleh v. Nike, Inc.* ................................................... 4

            c. The Court Should Follow *Javier v. Assurance
            IQ, LLC*, Which Flatly Rejected the
            "Extension" Line of Cases in Evaluating
            Section 631(a) Claims .................................................... 5

            d. The Court Should Follow *Yeti Coolers* and
            *Nationwide.* .................................................................. 9

            e. *Licea v. Genesco, Inc.* Supports Plaintiff's
            Position. ...................................................................... 10

        3. Defendant's "In Transit" Analysis Ignores Relevant
        Case Law. ............................................................................. 10

        4. The Second Clause Applies to Intercepted
        Communications Sent From or Received at Any Place
        Within California. ................................................................. 12

        5. Kustomer Is a "Person" Regardless of Whether It Is
        Organized as a Limited Liability Company ........................... 13

6.   Because the TAC Alleges a Plausible Violation of the Second Clause of Section 631(a), the TAC Plausibly Alleges that Defendant's Chat Provider Also Violated the Third Clause. .................................................................. 14

7.   The Fourth Clause Is Actionable Against Defendant. ........................ 14

B.   Plaintiff's Claim Under Section 632.7 Is Actionable.................................... 16

1.   The TAC Cures the Deficiency in the FAC by Alleging that Plaintiff Used a Smart Phone to Communicate with Defendant's Chat Feature.................................... 16

2.   The Court Should Disregard Defendant's Substantive Arguments, Which Is an Untimely Motion for Reconsideration.................................................................. 17

3.   The Plain Language and Legislative History Support Plaintiff's Interpretation. ...................................................... 17

C.   Sections 631(a) and 632.7 of the California Penal Code Are Both Constitutional.......................................................................... 18

D.   The Court Should Reject Defendant's Smear Job Tactics. ........................ 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................2, 3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................2, 3

*Branden v. Branden*,
  2018 WL 11303983 (E.D. Tenn. Feb. 26, 2018) ..............................................12

*Brickman v. Facebook, Inc.*,
  230 F. Supp. 3d 1036 (N.D. Cal. 2017) ..........................................................20

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................12

*Burgess v. United States*,
  553 U.S. 124 (2008) ..................................................................................14

*Byars v. The Goodyear Tire & Rubber Co.*,
  2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ......................................1

*Byars v. Hot Topic, Inc.*,
  2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) (Bernal, J.) ...................................8

*Carey v. Brown*,
  447 U.S. 455 (1980) ..................................................................................20

*Centre Law and Consulting, LLC v. Axiom Resource Mngt, Inc.*,
  456 F. Supp. 3d 765 (E.D. Va. 2020) .........................................................11, 12

*China Beds Direct LLC v. Winsor*,
  2016 WL 8738435 (E.D. Tenn. Feb. 26, 2016) ................................................12

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) (Orrick, J.) ..........................................12

*Cody v. Boscov's, Inc.*,
  - F. Supp. 3d - , 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) (Sykes, J.)..1, 2, 21

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ........................................................................13, 14

*Garcia v. Yeti Coolers, LLC*,
    2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) (Klausner, J.) ................ 1, 4, 9, 11

*Gerritsen v. Warner Bros. Enter. Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) (Morrow, J.).........................................16

*Graham v. Noom*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.).........................6, 7, 8, 9

*Hazel v. Prudential Financial, Inc.*,
    2023 WL 3933073, at *2-*4 (N.D. Cal. June 9, 2023) (Breyer, J.) .............1, 4, 8

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...............................................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021)..............4, 10

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................13

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003)...................................................................................11

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)......................................12, 14

*Javier v. Assurance IQ, LLC*,
    2023 WL 114225 (N.D. Cal. Jan. 5, 2023) (Breyer, J.)............................. *passim*

*Johnson v. Blue Nile, Inc.*,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) (Beeler, Mag. J.).......................6, 7

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868, 878 (9th Cir. 2002) ......................................................................11

*Licea v. Cinmar, LLC*,
    2023 WL 2415592 (C.D. Cal. Mar. 7, 2023)......................................................12

*Licea v. Genesco, Inc.*,
    No. 3:22-cv-01567-JO-KSC, Doc. 31 (S.D. Cal. Oct. 17, 2023) (Ohta,
    J.)................................................................................................................1, 4, 10

*Licea v. Old Navy, LLC*,
  2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) (Sykes, J.) ....................................1

*Luis v. Zang*,
  833 F.3d 619 (6th Cir. 2016) ......................................................................10, 11

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.),
  *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ..........11

*Matera v. Google Inc.*,
  2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) (Koh, J.) .....................................3

*Matera v. Google Inc.*,
  2017 WL 1365021 (N.D. Cal. Mar. 15, 2017) (Koh, J.) .....................................3

*Montantes v. Inventure Foods*,
  2014 WL 3305578 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) ...............................3

*NovelPoster v. Javitch Canfield Group*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................12

*Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*,
  2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017) .........................................12

*Popa v. Harriet Carter Gifts, Inc.*,
  52 F.4th 121 (3d Cir. 2022) ...........................................................................10

*Project Veritas v. Schmidt*,
  72 F.4th 1043 (9th Cir. 2023) .............................................................. 18, 19, 20

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) .................... *passim*

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.).................... 4, 5, 9, 15

*Sheu v. Detroit 90/90*,
  2015 WL 2124624 (E.D. Mich. May 6, 2015) ..................................................12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...........................................................................................8

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) .............................................................12

*Swanson v. U.S. Forest Serv.*,
   87 F.3d 339 (9th Cir. 1996) ................................................................19

*United States v. Angelilli*,
   660 F.2d 23 (2d Cir. 1981).................................................................14

*United States v. Councilman*,
   418 F.3d 67 (1st Cir. 2005) (en banc).................................................11

*United States v. Steiger*,
   318 F.3d 1039 (11th Cir. 2003), *cert. denied*, 538 U.S. 1051 (2003) ...............11

*United States v. Szymuszkiewicz*,
   622 F.3d 701 (7th Cir. 2010) ..............................................................11

*Valenzuela v. Nationwide Mutual Ins. Co.*,
   2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) (Frimpong, J.) ................... *passim*

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) (Alsup, J.)...........................6, 7

*Woolfson v. Conn Appliances, Inc.*,
   2022 WL 3139522 (N.D. Cal. Aug. 5, 2022) .......................................19

*Yale v. Clicktale, Inc.*,
   2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) (Beeler, Mag. J.)....................6, 7

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016)................................................................14

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ................................4, 5, 9

**California Cases**

*City of San Jose v. Superior Court*,
   5 Cal. 4th 47 (1993) .........................................................................8

*Esparza v. Urban Outfitters Inc.*,
   No. 23STCV08874 (Cal. Super. Ct., L.A. Cty. Oct. 24, 2023) (Fujie, J.) .......1, 4

*Flanagan v. Flanagan*,
   27 Cal.4th 766 (2002) ......................................................................19

*Licea v. Brooklyn Bedding LLC*,
   No. 23STCV04925 (Cal. Super. Ct., Los Angeles County Sept. 25,
   2023) (Crowley, J.) .......................................................................1, 2, 4

*Licea v. Jockey Int'l, Inc.*,
   No. 23STCV02906 (Cal. Super. Ct., L.A. Cty. Aug. 11, 2023)
   (Richardson, J.) ..................................................................... 1, 2, 4, 15

*Licea v. Malwarebytes Inc.*,
   No. CIV SB 2224245 (Cal. Super. Ct. San Bernardino Cty. July 19,
   2023) ..............................................................................................1, 4

*Licea v. The Men's Wearhouse, LLC*,
   No. 23STCV02964 (Cal. Super. Ct. L.A. Cty. July 24, 2023) (Leiter, J.) ...1, 2, 4

*Ribas v. Clark*,
   38 Cal.3d 355 (1985) ............................................................... *passim*

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) .................................................................8

**U.S. Constitution**

First Amendment.............................................................................18, 20

**Federal Statutes**

Electronic Communications Privacy Act of 1986, Pub. L. 99-508, 100 Stat.
   1848 (1986)....................................................................................3, 11

Telephone Consumer Protection Act, 42 U.S.C.
   § 227 *et seq.* .......................................................................................20

Wiretap Act ................................................................................ 10, 11, 12

**California Statutes**

Penal Code
   § 7...................................................................................................13
   § 630 *et seq.* .......................................................................................3
   § 631 ....................................................................................... *passim*
   § 631(a) ................................................................................... *passim*
   § 632.7 ..................................................................................... *passim*
   § 632.7(a) ...........................................................................................18
   § 632.7(c)(3) .......................................................................................17

§ 633.5 ................................................................................. 19, 20, 21

California Invasion of Privacy Act ....................................... 2, 4, 12, 19

**Other State Statutes**

Or. Rev. Stat.

§ 165.535(1) ................................................................................ 18

§ 165.540(1)(c) ...................................................................... 18, 20

§ 165.540(5)(a) ...................................................................... 18, 19

§ 165.540(5)(b) ...................................................................... 18, 19

§ 165.540(c) ................................................................................ 18

**Federal Rules**

L.R. 7-18 ........................................................................................... 17

Rules of Civil Procedure

Rule 8 ........................................................................................... 3

Rule 9 ........................................................................................... 3

Rule 9(b) ....................................................................................... 3

Rule 12(b)(6) ........................................................................ 2, 3, 16

**Other Authorities**

California Jury Instructions—Criminal 3.01 (Oct. 2022 Update) .................. 15, 16

Certified Copy of Reporter's Transcript of Proceedings of Motion Hearing
on Oct. 11, 2023 in *Cantu v. Sunrun Inc.*, No. 3:23-cv-00974-JO-AHG
(S.D. Cal. Oct. 11, 2023) (Ohta, J.) ..................................................... 21

Certified Copy of Reporter's Transcript of Proceedings of Motion Hearing
on Oct. 13, 2023 in *Licea v. Genesco, Inc.*,
No. 3:22-cv-01567-JO-KSC (S.D. Cal. Oct. 17, 2023) (Ohta, J.) ...................... 1

Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee
E-Mail*, 48 Ala. Law Rev. 1079, 1083 (1997) ........................................ 11

Tentative Rulings filed on July 19, 2023 in *Licea v. Malwarebytes Inc.*,
No. CIV SB 2224245 (Cal. Super. Ct. San Bernardino Cty. July 19,
2023) .............................................................................................. 1, 4

Senate Committee on Judiciary, Bill Analysis of Assembly Bill No. 2465
(1991-1992 Regular Session), As Amended June 1, 1992 (Date of
hearing: June 9, 1992) ....................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant conveniently ignores that multiple courts have recognized that similar cases are cognizable under section 631(a) of the California Penal Code. *See, e.g.*, *Licea v. Genesco, Inc.*, No. 3:22-cv-01567-JO-KSC, Doc. 31 at 1:20-26 (S.D. Cal. Oct. 17, 2023) (Ohta, J.) (denying motion to dismiss section 631(a) claim) (RJN Exs. 1-2); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *2-*4 (C.D. Cal. Sept. 5, 2023) (Klausner, J.) (same); *Valenzuela v. Nationwide Mutual Ins. Co.*, 2023 WL 5266033, at *3-*7 (C.D. Cal. Aug. 14, 2023) (Frimpong, J.) (same); *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073, at *2-*4 (N.D. Cal. June 9, 2023) (Breyer, J.) (same); *Byars v. The Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *5 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) (same); *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *3-*6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (holding that defendant's argument that third-party software maker was an "extension" of defendant website operator "does not provide a basis for dismissal at this stage" regarding section 631(a) claim); *see also Esparza v. Urban Outfitters Inc.*, No. 23STCV08874, at 4-6 (Cal. Super. Ct., L.A. Cty. Oct. 24, 2023) (Fujie, J.) (overruling demurrer as to section 631(a) claim) (RJN Ex. 7); *Licea v. Brooklyn Bedding LLC*, No. 23STCV04925, at 3-7 (Cal. Super. Ct., Los Angeles County Sept. 25, 2023) (Crowley, J.) (same) (RJN Ex. 6); *Licea v. Jockey Int'l, Inc.*, No. 23STCV02906, at 4-12 (Cal. Super. Ct., L.A. Cty. Aug. 11, 2023) (Richardson, J.) (same) (RJN Ex. 5); *Licea v. The Men's Wearhouse, LLC*, No. 23STCV02964, at 2-3 (Cal. Super. Ct. L.A. Cty. July 24, 2023) (Leiter, J.) (same) (RJN Ex. 4); *Licea v. Malwarebytes Inc.*, No. CIV SB 2224245, at 2-3 (Cal. Super. Ct. San Bernardino Cty. July 19, 2023) (same) (RJN Ex. 3).

In addition, this Court has denied similar motions seeking to dismiss § 632.7 claims. *Goodyear*, 2023 WL 1788553, at *5; *Licea v. Old Navy, LLC*, 2023 WL 3012527, at *3-*4 (C.D. Cal. Apr. 19, 2023) (Sykes, J.); *see also Cody v. Boscov's, Inc.*, - F. Supp. 3d - , 2023 WL 2338302, at *2-*3 (C.D. Cal. Mar. 2, 2023) (Sykes, J.)

(the "Order") (Doc. 47 at 6:1-21); *Brooklyn Bedding LLC*, *supra*, at 7-8 (overruling demurrer as to section 632.7 claim) (RJN Ex. 6); *Jockey Int'l*, *supra*, at 12-13 (same) (RJN Ex. 5); *The Men's Wearhouse*, *supra*, at 3 (same) (RJN Ex. 4).

Because the reasoning of the decisions finding similar claims to be cognizable under sections 631(a) and 632.7 is more persuasive than the decisions cited by Defendant, the Court should follow such decisions.

## II.   ARGUMENT

**A.   The TAC Plausibly Alleges that Defendant's Chat Provider Violated the Second and Third Clauses of Section 631(a) of the California Penal Code.**

> **1.   The TAC's Allegations About the Chat Provider's Conduct Are Plausible.**

The Third Amended Complaint ("TAC") alleges that Defendant employed a third-party eavesdropper named "Kustomer" as its chat provider for the Website.  (TAC ¶ 27.)  The TAC plausibly alleges that the chat provider has violated the second and third clauses of section 631(a).  (TAC ¶¶ 25-39.)  Specifically, the TAC affirmatively alleges that the chat provider intercepts, harvests, stores, and uses the chat transcripts of visitors of the Website including Plaintiff, which are used for targeted advertising.  *Id.* The TAC affirmatively alleges that Defendant's chat provider interacts with the chat data beyond merely recording users' chat communications.  (TAC ¶¶ 27-35.)  Such allegations go well "beyond simply supplying this information back to Defendant."  *Cody*, 2023 WL 2338302, at *2.

These allegations of fact are required to be assumed as true as opposed to a conclusion for purposes of the instant Motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

The surreptitious collection of user data to create targeted advertising has been

recognized as actionable under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.* Indeed, in *Matera v. Google Inc.*, 2017 WL 1365021 (N.D. Cal. Mar. 15, 2017) (Koh, J.), a putative class action was filed under both the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. 99-508, 100 Stat. 1848 (1986), and CIPA because "Google intercepts, scans, and analyzes the content of emails sent by non-Gmail users for the purpose of creating user profiles of Gmail users to create ***targeted advertising*** for Gmail users." *Id.* at *1 (emphasis added). This fact was not disclosed by Google. *Id.* Notably, the federal court denied Google's motion to dismiss the CIPA claim on the merits under Rule 12(b)(6). *Matera v. Google Inc.*, 2016 WL 8200619, at *18-*21 (N.D. Cal. Aug. 12, 2016) (Koh, J.).

Although Defendant expressly argues that Plaintiff must plead a prima facie claim, (Def.'s Mem. at 19:9-10), that is not, however, the applicable legal standard on the instant Motion. "While *Twombly* and *Iqbal* enhanced the standard of Rule 8 to require that complaints set forth a claim for relief that is plausible on its face, ***it stopped short of requiring complaints to set forth a prima facie case***." *Montantes v. Inventure Foods*, 2014 WL 3305578, at *6 (C.D. Cal. July 2, 2014) (Fitzgerald, J.) (emphasis added). "[A] complaint need not necessarily set forth facts supporting every element of a claim in order to survive a motion to dismiss under Rule 12(b)(6)." *Id.* *Montantes* engages in a comprehensive analysis of case law to hold that the Ninth Circuit has "pulled away from a strict rule that a complaint must plead all elements of the claim." *Id.* at *7.

The Court should not apply a heightened pleading standard under Rule 9(b), which the Supreme Court has rejected for ordinary cases.[1]

## 2. Multiple Federal Decisions Have Recognized that a Third Party Software Provider Can Violate Section 631(a).

---

[1] In addressing its plausibility legal standard on a Rule 12(b)(6) motion, the Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]" *Twombly*, 550 U.S. at 569 n.14.

Although Defendant relies upon case law standing for the proposition that its chat provider cannot be liable for violation of any portion of section 631(a) unless such chat provider uses user data for its own independent purposes that are not for the website owner or operator's benefit, (Def.'s Mem. at 2 n.1; 9:28-10:7; 11:1-6), those cited decisions are unpersuasive because they were wrongly decided.   The Ninth Circuit decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*In re Facebook*"), as well as the federal district court decisions in *Genesco*, *supra*, at 1:20-26, *Yeti Coolers*, 2023 WL 5736006, at *2-*4, *Nationwide*, 2023 WL 5266033, at *3-*7, *Hazel*, 2023 WL 3933073, at *4, *Javier*, 2023 WL 114225, at *3-*6, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021) (Aenlle-Rocha, J.), *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (Holcomb, J.), and *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.), all support Plaintiff's position that Defendant's chat provider violated the second and third clauses as an eavesdropper.   Similarly, the recent California Superior Court decisions in *Urban Outfitters*, *supra*, at 4-6 (RJN Ex. 7), *Brooklyn Bedding*, *supra*, at 3-7 (RJN Ex. 6); *Jockey Int'l*, *supra*, at 4-12 (RJN Ex. 5), *The Men's Wearhouse*, *supra*, at 2-3 (RJN Ex. 4), *Malwarebytes*, *supra*, at 2-3 (RJN Ex. 3), support Plaintiff's position as well.

### a. The Court Should Follow the Ninth Circuit's Decision in *In re Facebook*.

The Court should follow *In re Facebook*, *supra*, in which the Ninth Circuit did not construe section 631(a) as imposing any type of requirement that Facebook not be an "extension" or "tool" of the third-party websites with Facebook plug-ins at issue therein in concluding that "Facebook is not exempt from liability as a matter of law under … CIPA."  956 F.3d at 607-08.

### b. The Court Should Follow the Court's Decision in *Saleh v. Nike, Inc.*.

In *Saleh v. Nike, Inc.*, *supra*, the Court rejected the argument that a separate legal entity that offers "software-as-a-service" to Nike, the owner and operator of its website, cannot be considered a third party to the plaintiff's communications with Nike because the provider provides a service to Nike as follows:

> "Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation ***at the direction and for the benefit of a party***. ***The text of section 631(a), however, does not contain any such exception*** ...."

*Saleh*, 562 F. Supp. 3d at 520 (emphasis added); *id.* at 521 ("FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike.").

In support, *Saleh* cited *Revitch*, the latter of which explained that "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication." 2019 WL 5485330, at *2; *see also Yoon*, 549 F. Supp. 3d at 1081 (citing *Revitch*) ("[I]s Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."). *Saleh* should be followed because it is persuasive.

### c. The Court Should Follow *Javier v. Assurance IQ, LLC*, Which Flatly Rejected the "Extension" Line of Cases in Evaluating Section 631(a) Claims.

The recent decision in *Javier v. Assurance IQ, LLC*, *supra*, is directly on point. In *Javier*, the district court held after a comprehensive analysis that the third-party eavesdropper could be liable under the second prong of section 631(a) despite the

defendants' characterization of the third party as a mere "extension" of the party to the communication, i.e., the website owner/operator.  2023 WL 114225, at *3-*6.  After recognizing dueling sets of cases on this precise issue, the court explained why the case law holding that software vendors are "extensions" of the websites that employ them are unpersuasive.  *Id.* at *6.  Several takeaways are worth noting about *Javier*.

First, *Javier* clearly shows that there is a disagreement amongst federal district courts within the Ninth Circuit about the propriety of analyzing whether third party software providers are an "extension" of website operators in determining whether such third party conduct can violate any of the clauses of section 631(a) of the California Penal Code.  On one hand, certain cases have relied upon the so-called "extension" argument to limit derivative liability under section 631(a) to circumstances in which user data is used by a third party for its own benefit.  *Graham v. Noom*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021) (Beeler, Mag. J.).  Magistrate Judge Beeler applied the same reasoning in two other cases.  *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (Beeler, Mag. J.); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (Beeler, Mag. J.).  According to *Javier*, a court that used "[s]ubstantially similar reasoning" is *Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) (Alsup, J.), in which the district court stated:

> "Judge Laurel Beeler's reasoning in deciding a series of factually similar cases is instructive: a key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way."

*Williams*, 2022 WL 17869275, at *3 (citing *Graham*, *Johnson*, and *Yale*).  *Williams* then stated:

> "Just like in *Graham*, there are no facts here to suggest that ActiveProspect 'intercepted and ***used the data itself***.'  *Graham*, 533 F. Supp. 3d at 832. … ***The facts as pled suggest that the recordation is routine documentation and***

*therefore clerical in nature, which is qualitatively different from data mining.* That recorded videos are hosted and accessed on ActiveProspect's servers is part of how the software tool functions, and *plaintiff makes no allegation that ActiveProspect or its TrustedForm product affirmatively engages with that data in any way other than to store it*."

*Williams*, 2022 WL 17869275, at *3 (emphasis added). After noting *Williams*'s existence, *Javier* then proceeded to state that "[t]here are two problems with this reading of Section 631." *Javier*, 2023 WL 114225, at *6. *Javier* then proceeded to engage in its comprehensive analysis addressing why the court disagreed with the analysis of *Graham*, *Johnson*, *Yale*, and *Williams*, and held:

"Thus, [plaintiff] has plausibly alleged that ActiveProspect is a third party under Section 631, and Defendants' argument that ActiveProspect is an 'extension' of Assurance does not provide a basis for dismissal at this stage."

*Id.* Thus, it is impossible to ignore that *Javier* reveals a clear disagreement amongst district courts in the Ninth Circuit regarding the applicability of the so-called "extension" purported requirement.

Second, *Javier*'s reasoning can and should be viewed as persuasive. *Javier's* first reason for rejecting *Graham*'s "extension" reasoning is that "it interprets the second prong of the statute—'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit'—*based on the intentions and usage of the prospective third party*." *Javier*, 2023 WL 114225, at *6 (citing Cal. Penal Code § 631(a)) (emphasis added). *Javier* added:

"But the third prong of the statute already penalizes 'use'—'us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained.' *Id.* Thus, *reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)*."

*Javier*, 2023 WL 114225, at \*6 (emphasis added).  In *Hazel*, the same judge who decided *Javier* explained that "as the Court articulated in *Javier*, the concern is not on whose behalf the recording is undertaken, but whether the recorder is <u>capable</u> of using the recording for other ends.  *Javier*, 2023 WL 114225, at \*6.  That is the difference between the tape recorder in *Rogers [v. Ulrich*, 52 Cal. App. 3d 894 (1975)] and the eavesdropping friend in *Ribas [v. Clark*, 38 Cal.3d 355 (1985)]…."  *Hazel*, 2023 WL 3933073, at \*4 (emphasis in original).  Thus, *Javier*'s reasoning is not an aberration.

And, *Javier*'s stated concern that construing the second clause of section 631(a) as imposing an "extension" requirement upon a third party would "swallow the third prong in the process" is valid.  California applies the presumption against superfluous statutory terms.  *City of San Jose v. Superior Court*, 5 Cal. 4th 47, 55 (1993) ("We ordinarily reject interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance.").  In other words, if the second clause of section 631(a) imposes an "extension" requirement upon a third party, then the "use" language in the third clause would serve no role in the statute.  That is a topic that Defendant conveniently ignores.  Indeed, none of the courts that have adopted the "extension" analysis of *Graham* have addressed it, which undermines their persuasive value.  Thus, the decisions cited by Defendant are unpersuasive.[2]

In addition, *Javier* then proceeded to set forth a second reason why the court disagreed with the "extension" argument as follows:

"The second problem with this view is that it was not the California Supreme Court's stated rationale in <u>Ribas</u>: The <u>Ribas</u> Court did not consider the wife's friend's intentions or the use to which they put the information they obtained.  Instead, it emphasized the privacy concerns at issue with having an 'unannounced

---

[2] Defendant's reliance on *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at \*7-\*10 (C.D. Cal. Feb. 14, 2023) (Bernal, J.), for its merits analysis is especially misplaced because it addressed the merits therein without having any subject matter jurisdiction, and so *Hot Topic* goes "beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

second auditor' listening in on the call, when Section 631 concerns 'the right to control the nature and extent of the firsthand dissemination of [their] statements.'"

*Javier*, 2023 WL 114225, at \*6 (quoting *Ribas v. Clark*, 38 Cal.3d 355, 360-61 (1985)). Elsewhere, *Javier* explained, "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as **critical** to the purposes of Section 631[.]"   *Javier*, 2023 WL 114225, at \*6 (emphasis added) (quoting *Ribas*, 38 Cal.3d at 361).   *Javier*'s reliance on *Ribas* should be viewed as highly persuasive.   *Ribas* is a landmark California Supreme Court decision that held that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device[.]"   *Ribas*, 38 Cal.3d at 360-61.   As the court correctly explained in *Javier*, "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]"   *Javier*, 2023 WL 114225, at \*6.

### d.    The Court Should Follow *Yeti Coolers* and *Nationwide*.

In *Yeti Coolers*, *supra*, the Court recently recognized the "split" of courts in their approaches to the party exception under section 631(a), but agreed with the line of case authority supporting the plaintiff's position including *Saleh*, *Yoon*, and *Javier*.   *Id.* at \*2-4.   *Yeti Coolers* considered, but did not agree with *Graham*.   *Id.*

Similarly, in *Nationwide*, *supra*, the Court expressly disagreed with the reasoning of *Graham* and held, "Whether the third party's use was purely for Nationwide's benefit, rather than for its own benefit is immaterial under the statute.   Allowing a third party to listen in makes the third party liable for a violation of Section 631."   *Nationwide*, 2023 WL 5266033, at \*7.   Notably, *Nationwide* cited *Saleh* and *Revitch* in support of the proposition that "at least two federal District Courts have held that a software vendor hired by a party to a conversation, and acting for that party's benefit, is not itself a party and therefore is not protected by the party exception."   *Id.* at \*6.

Significantly, *Nationwide* also noted that "when a first party intends to communicate with a second party, and computer code automatically directs the communication to an additional third party, the third party is not construed as a party to the communication, and so the party exception does not shield the third party." *Nationwide*, 2023 WL 5266033, at *4. In support, *Nationwide* cited the Ninth Circuit's decision in *In re Facebook*. *Nationwide*, 2023 WL 5266033, at *4.

### e. *Licea v. Genesco, Inc.* Supports Plaintiff's Position.

Assuming *arguendo* that the TAC must allege that a third party chat provider had an independent purpose to intercept chat communications, the TAC adequately pleads such allegations. *Genesco*, *supra*, supports the sufficiency of the TAC's pleading of the § 631(a) claim.

### 3. Defendant's "In Transit" Analysis Ignores Relevant Case Law.

Defendant contends that the TAC fails to sufficiently allege that Defendant's chat provider intercepted Plaintiff's chat communications with Defendant without Plaintiff's consent "while the same is in transit or passing over any wire, line or cable," (Cal. Penal Code § 631(a)). (Def.'s Mem. at 14:7-18:4.) Defendant's "in transit" analysis is without merit because it ignores relevant case law supporting Plaintiff's position that such so-called requirement has been sufficiently pled.

Numerous courts (including multiple federal circuit courts) have recognized that automatic routing software can satisfy the contemporaneous transmission requirement of either the Wiretap Act or the second clause of section 631(a) of the California Penal Code. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130-31 (3d Cir. 2022) ("Electronic communications are similarly 'intercepted' when software reroutes communications to an interceptor.") ("So NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers.") (citing *Luis v. Zang*, 833 F.3d 619, 630-31 (6th Cir. 2016) (holding that complaint's allegations against manufacturer of computer program that computer program "immediately and instantaneously" routed e-mails and instant messages to manufacturer's servers "as they

[were] being written," thereby enabling program's user to view person's electronic communications "in near real-time" adequately alleged manufacturer contemporaneously "intercepted" plaintiff's electronic communications because it supported reasonable inference that manufacturer acquired plaintiff's communications while they were still "in flight")); *United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010) (affirming defendant's conviction under "interception" provision of Wiretap Act for setting up process whereby defendant's supervisor's emails were ***automatically forwarded*** to defendant's email account for extended period of time); *United States v. Councilman*, 418 F.3d 67, 85 (1st Cir. 2005) (en banc)[3] ("almost a year before [defendant's] alleged conduct, the academic literature had noted that ... 'automatic routing software' that automatically forwarded duplicate copies of a user's messages *would* qualify as 'interception of E-mail within the prohibition of the ECPA.'") (emphasis in original) (quoting Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee E-Mail*, 48 Ala. Law Rev. 1079, 1083 (1997) ("*E-Mail @Work.com*") and citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 22 (1st Cir. 2003) (describing a software program as "effectively an automatic routing program") ("It was code that automatically duplicated part of the communication between a user and a … client and sent this information to a third party ….") (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003), *cert. denied*, 538 U.S. 1051 (2003) (quoting *E-Mail @Work.com*, 48 Ala. Law Rev. at 1083))).

Numerous federal district courts support Plaintiff's position as well. *See, e.g., Yeti Coolers*, 2023 WL 5736006, at *4; *Nationwide*, 2023 WL 5266033, at *5; *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.); *Centre Law and Consulting, LLC v. Axiom Resource Mngt, Inc.*, 456 F. Supp. 3d 765, 770 & n.7

---

[3] A district court in the Ninth Circuit has noted that "*Councilman* is consistent with the Ninth Circuit's 'contemporaneous' requirement articulated in *Konop [v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)]." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1081 (N.D. Cal. 2015).

(E.D. Va. 2020); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1046-48, 1051 (N.D. Cal. 2018) (Orrick, J.); *Branden v. Branden*, 2018 WL 11303983, at *3-*4 (E.D. Tenn. Feb. 26, 2018); *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017); *China Beds Direct LLC v. Winsor*, 2016 WL 8738435, at *3 (E.D. Tenn. Feb. 26, 2016); *Sheu v. Detroit 90/90*, 2015 WL 2124624, at *13 (E.D. Mich. May 6, 2015); *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014).

Numerous federal courts decisions construe section 631(a)'s "in transit" statutory language consistent with the Wiretap Act's construction.[4]

### 4. The Second Clause Applies to Intercepted Communications Sent From or Received at Any Place Within California.

Assuming *arguendo* that the Court finds that the TAC fails to sufficiently allege that Defendant's chat provider intercepted Plaintiff's chat communication with Defendant without Plaintiff's consent "while the same is in transit or passing over any wire, line or cable," (Penal Code § 631(a)), the second clause of section 631(a) would be, nevertheless, actionable because the TAC alleges that the intercepted communication "is being sent from, or received at any place within this state[.]" (Cal. Penal Code § 631(a).) Thus, the "in transit" so-called requirement is inconsequential to stating a viable claim under the second clause of section 631(a) because the TAC strongly implies that the intercepted communication of Plaintiff was sent from California, which is her state of residence. (TAC ¶¶ 19, 36.)

*Ribas v. Clark*, 38 Cal.3d 355, 359-60 (1985), is directly on point. In *Ribas*, the Supreme Court expressly rejected the defendant's argument focusing exclusively upon

---

[4] "[C]ourts have looked at cases analyzing the Wiretap Act as informative of section 631(a)." *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. Mar. 7, 2023); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.). "'The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.'" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted).

the "in transit" term in the second clause because it "ignores the plain meaning of section 631, subdivision (a), that provides for the punishment of one 'who willfully and without the consent of all parties…reads, or attempts to read, or to learn the contents…of [a] … communication while the same is *in transit…, or is being sent from, or received at* any place within this state…." 38 Cal.3d at 359-60 (emphasis in original). Thus, the Supreme Court interpreted the "in transit" term and "being sent from"/"received at" phrase disjunctively. *Id.* at 360. The Court is bound to follow *Ribas*.

Indeed, as *Revitch* explained, "[T]he particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis….Section 631's protections extend explicitly to the beginnings and ends of communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach." *Revitch*, 2019 WL 5485330, at *2 (emphasizing the phrase "*or is being sent from, or received at any place within this state*") (emphasis in original).

Finally, *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), supports Plaintiff's position. *Id.* at 826 ("Because the [second] clause is written in the disjunctive, the Court agrees that it could be read to cover messages 'being sent from, or received at any place within this State,' without regard to whether the sending and receiving makes use of a 'wire, line, or cable.'").

### 5.    Kustomer Is a "Person" Regardless of Whether It Is Organized as a Limited Liability Company.

Defendant makes a novel argument that Kustomer could not have violated Plaintiff's rights under § 631(a) because it is not a "person" within the meaning of that term in § 631(a).  In support, Defendant relies upon section 7 of the California Penal Code, which states in relevant part as follows:

"[T]he word 'person' ***includes*** a corporation as well as a natural person[.]" (Cal. Penal Code § 7) (emphasis added).  Notably, the Ninth Circuit has characterized the word "includes" as "open-ended".  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984

(9th Cir. 2017).  Similarly, the Court has noted, "This word [includes] 'normally implies that the proffered definition falls short of capturing the whole meaning.'"  *In re Vizio, Inc.*, 238 F. Supp. 3d at 1224 (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) and *United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir. 1981) ("The use of the word 'includes,' rather than a more restrictive term such as 'means,' 'indicates that the list is not exhaustive but merely illustrative.'") (citation omitted)).

If the Legislature intended to limit the term "person" to only a "corporation" or a "natural person," then surely the Legislature would have used the term "means" instead. "'As a rule, [a] definition which declares what a term 'means' ... excludes any meaning that is not stated.'" *In re Vizio, Inc.*, 238 F. Supp. 3d at 1224 (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008) (citation omitted)).

Finally, Defendant fails to cite a single decision to support its novel interpretation (with good reason, because no such decision exists).  The Court should reject it.

**6.    Because the TAC Alleges a Plausible Violation of the Second Clause of Section 631(a), the TAC Plausibly Alleges that Defendant's Chat Provider Also Violated the Third Clause.**

The third clause of section 631(a) is actionable against any person "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."  (Cal. Penal Code § 631(a).)  Given that the TAC alleges a plausible violation of the second clauses by Defendant's chat provider for its Website, the Court should hold that the TAC sufficiently alleges that such chat provider also violated the third clause by using "in any manner, or for any purpose" Plaintiff's chat communication with Defendant.

**7.    The Fourth Clause Is Actionable Against Defendant.**

Given that Plaintiff has pled a violation of the second and third clauses of section 631(a) because of the chat provider's actions, which Defendant has aided, Plaintiff has stated a claim under the fourth clause under an aiding and abetting theory.  As was the

case in *Revitch*, the defendant website merchant "violated section 631 by ***enabling*** [a third party's] wrongdoing." *Revitch*, 2019 WL 5485330, at *2 (emphasis added), *quoted in Saleh*, 562 F. Supp. 3d at 521.

*Revitch* is directly on point.  The plaintiff therein alleged that the defendant website operator had software code embedded into the webpages that functioned as a wiretap that redirected the plaintiff's communications to a third party eavesdropper while the plaintiff browsed the defendant's website.  *Revitch*, 2019 WL 5485330, at *1. Notably, the court held that "***it does not follow that parties to communications are immune from section 631 liability***."  *Id.* at *2 (emphasis added).  The court added, "[Plaintiff's] claim that [Defendant] violated section 631 by helping [the undisclosed third party] eavesdrop is therefore not barred as a matter of law."  *Id.*

The Court can infer Defendant's knowledge based on the fact that the chat provider's behavior constitutes eavesdropping that is actionable under section 631(a) of the Penal Code, which Defendant provided substantial assistance to the chat provider by deliberately (but covertly) embedding the latter's software code into the code for Defendant's Website without obtaining its users' informed consent.  (TAC ¶¶ 27-28, 39); *Jockey*, *supra*, at 11-12.

Although Defendant contends that a "defendant's ***specific knowledge*** of the underlying criminal acts" is an element of any aiding and abetting claim under California law, (Def.'s Mem. at 11:17) (emphasis added), California Jury Instructions— Criminal 3.01, provides:

"A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she:

(1) With knowledge of the unlawful purpose of the perpetrator, and

(2) With the ***intent*** or ***purpose*** of committing or encouraging or facilitating the commission of the [***act***] [or] [crime], and

(3) By act or advice, [or, by failing to act in a situation where a person has a legal duty to act,] aids, promotes, encourages or instigates the commission of the [*act*] [or] [crime]."

California Jury Instructions—Criminal 3.01 (Oct. 2022 Update) (emphasis added). Thus, the jury instruction shows that a person can aid and abet the commission of a crime when he or she "[b]y act or advice" "aids, promotes, encourages or instigates the commission of the [act]" "[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the [act]." Thus, a person can aid and abet the commission of a crime merely by having the intent to encourage the commission of the ***act***, as opposed to the ***crime***. Thus, Defendant's attempt to attribute an intent to encourage or facilitate a "crime" is mistaken.

Defendant argues that its knowledge would be impossible since Kustomer claims to comply with applicable laws. (Def.'s Mem. at 12:1-18.) Defendant's argument should be rejected as unpersuasive. Also, Defendant's reliance on Kustomer's representations about complying with federal and state law is improper as Kustomer's Terms of Service constitute extrinsic evidence that should not be considered in deciding the instant Motion brought under Rule 12(b)(6) motion. *See Gerritsen v. Warner Bros. Enter. Inc.*, 112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (Morrow, J.).

**B.    Plaintiff's Claim Under Section 632.7 Is Actionable.**

**1.    The TAC Cures the Deficiency in the FAC by Alleging that Plaintiff Used a Smart Phone to Communicate with Defendant's Chat Feature.**

In the Court's Order, which granted in part and denied in part Defendant's Motion to Dismiss the First Amended Complaint, the Court dismissed the section 632.7 claim with leave to amend to allow Plaintiff the opportunity to allege that she used a smartphone or other device covered by section 632.7 to access Defendant's Website. (Doc. 47 at 5:24-26; 7:1-2.)

The TAC expressly alleges that Plaintiff used a smart phone to visit Defendant's Website. (TAC ¶ 36.) Similarly, the Second Amended Complaint ("SAC") similarly

1  alleged such usage.  (SAC ¶ 20.)  Thus, Plaintiff has cured the sole pleading deficiency
2  raised by this Court.

3    **2.    The Court Should Disregard Defendant's Substantive Arguments,**
4    **Which Is an Untimely Motion for Reconsideration.**

5         Significantly, this Court rejected Defendant's substantive arguments as to why
6  Plaintiff allegedly failed to state a claim under section 632.7.  (Doc. 47 at 6:1-18.)
7  Curiously, Defendant claims that it is mindful of the Court's prior rulings in other
8  actions implicitly about section 632.7, (Def.'s Mem. at 5:8-9), but Defendant
9  inexplicably ignores the prior ruling in the instant action.  Regardless, although
10 Defendant makes substantive arguments as to why such claim fails to state a claim via
11 the instant Motion, (Def.'s Mem. at 18:5-20:16), the Court should disregard such
12 arguments because Defendant is, in essence, improperly moving for reconsideration of
13 the Order in violation of L.R. 7-18, which required that Defendant move for
14 reconsideration within 14 days of entry of such Order.  Defendant's opportunity to file a
15 timely motion for reconsideration expired on March 16, 2023.

16   **3.    The Plain Language and Legislative History Support Plaintiff's**
17   **Interpretation.**

18        Assuming *arguendo* that the Court considers Defendant's substantive arguments,
19 the Court should reject such arguments because Defendant ignores the plain language
20 and legislative history supporting Plaintiff's interpretation.  Section 632.7 of the Penal
21 Code broadly defines the term, "Communication," as "***includes***, but is not limited to,
22 communications transmitted by voice, ***data***, or ***image***, including ***facsimile***."  (Cal. Penal
23 Code § 632.7(c)(3)) (emphasis added).  Defendant relies on a plain meaning analysis
24 without persuasively explaining how to reconcile section 632.7's inclusion of
25 communications transmitted by "data, or image, including facsimile" within the
26 definition of "Communication," which are not aural containing a human voice.

27        Moreover, Defendant ignores that the legislative history of section 632.7, which
28 added the "Communication" definition, states:

"This last definition is needed, according to the author, to make it illegal to intercept FAX transmissions ***and cellular transmission of computer data***. 'The intent … is to anticipate the introduction of new technology to the marketplace. In this manner, we eliminate the need to return in 3-5 years when this technology is widely employed and unprotected'."

(RJN Ex. 8 at 4) (emphasis added).  Given that communications transmitted by "data," "image," or "facsimile," are within the scope of section 632.7, this strongly implies that the Legislature intended the undefined term, "landline telephone," in section 632.7(a) to be broadly construed.  Given that none of the decisions cited by Defendant address the foregoing legislative history, such decisions are unpersuasive.

## C.   Sections 631(a) and 632.7 of the California Penal Code Are Both Constitutional.

Defendant's conclusory argument relying upon *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023) (2-1 decision), is misplaced.  The Ninth Circuit addressed therein the constitutionality of a particular Oregon statute, Oregon Rev. Stat. § 165.540(c), which provides, subject to certain exceptions, that "a person may not … [o]btain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if not all participants in the conversation are specifically informed that their conversation is being obtained."   (Or. Rev. Stat. § 165.540(c)) (internal citation omitted).   The term "Conversation" was defined in a different statute to mean "the transmission between two or more persons of an oral communication which is not a telecommunication or a radio communication, and includes a communication occurring through a video conferencing program."   (Or. Rev. Stat. § 165.535(1).)   The Ninth Circuit held that section 165.540(c) was invalid on its face because it is a content-based restriction that violates the First Amendment right to free speech.  *Id.* at 1050.  Notably, the Ninth Circuit found that on its face "section 165.540(1)(c) and its [two] exceptions [in subsections (5)(a) and (b)] draw a distinction between topics."  *Id.* at 1057.  "For

example, the law applies no restrictions to recording law enforcement officials performing official duties, *see* Or. Rev. Stat. § 165.540(5)(b), but prohibits recording other government officials performing official duties unless they are informed that their conversation is being recorded.  Similarly, the statute distinguishes between recording felonies endangering human lives, *id.* § 165.540(5)(a), and recording similar conduct during the commission of a misdemeanor."  *Project Veritas*, 72 F.4th at 1057.

Here, in contrast, Defendant makes no attempt to identify any exceptions within either section 631 or section 632.7 constituting a content-based restriction.  Indeed, the California Supreme Court, in describing various statutes comprising CIPA, ***including section 632.7***, has stated:

> "Under the construction adopted here, the [CIPA] is a coherent statutory scheme.  It protects against intentional, nonconsensual recording of telephone conversations ***regardless of the content of the conversation*** or the type of telephone involved."

*Flanagan v. Flanagan*, 27 Cal.4th 766, 776 (2002) (emphasis added).  On its face, section 631 is content-neutral too.

Although Defendant implicitly relies upon a different statute, *i.e.*, section 633.5 of the California Penal Code, as purporting to create an exception to either section 631 or section 632.7,[5] section 633.5 does not constitute an amendment to either section 631 or section 632.7.  Instead, it was enacted into law as a separate statute.  Thus, the constitutionality of 633.5, which is surely not at issue here, is irrelevant to deciding the constitutionality of sections 631 and 632.7.

Second, Defendant conveniently ignores that the majority opinion in *Project Veritas* expressly rejected application of its decision to the context of ***eavesdropping***, which is precisely at issue here.  *Project Veritas*, 72 F.4th at 1067 ("the dissent's

---

[5] The Court should disregard Defendant's attempt to incorporate by reference its prior briefing.  *Woolfson v. Conn Appliances, Inc.*, 2022 WL 3139522, at *6 (N.D. Cal. Aug. 5, 2022) (citing *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)).

argument that a parade of horribles will result from our analysis—such as the invalidation of 'eavesdropping statutes'—is not well-taken"); *Ribas*, 38 Cal.3d at 359 ("Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties."). The Ninth Circuit explained:

> "[W]e are not aware of any cases holding that eavesdropping (without more) is protected speech. Therefore, ***the First Amendment would not constitute grounds to invalidate a statute prohibiting that conduct***. Moreover, we analyzed section 165.540(1)(c) as a prohibition of First Amendment protected speech in *public places*. Our analysis of the state's asserted governmental interest and whether its restriction on speech is narrowly tailored ***would necessarily be different in the context of eavesdropping***, where an individual's ***heightened privacy interests*** in his home are at stake. Nothing we have said today impugns the well-established rule that the First Amendment does not 'according [a speaker] immunity from torts or crimes committed' in service of his speech."

*Project Veritas*, 72 F.4th at 1067 (first, third, and fourth emphasis added).

Third, assuming *arguendo* that sections 631 and 632.7 are content-based restrictions on speech based upon section 633.5, both statutes surely survive strict scrutiny. "The Supreme Court has frequently emphasized that '[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.'" *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017) (quoting *Carey v. Brown*, 447 U.S. 455, 471 (1980)) (citations omitted). In *Brickman*, which addressed the constitutionality of the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227 *et seq.*, which regulates robocalls, the court held that the "the TCPA serves a compelling government interest in promoting ***residential privacy***." *Brickman*, 230 F. Supp. 3d at 1046 (emphasis added). There is no reasonable distinction between the "residential privacy" at issue in the TCPA versus the personal privacy at issue in sections 631 and 632.7. Any differentiation between the recording of the communication for the purpose of obtaining evidence reasonably

believed to relate to the commission by another party to the communication of the various serious crimes set forth in section 633.5, on one hand, and other communications, on the other hand, is surely justified by the State of California. And, such statutes are narrowly tailored as well because the list of serious crimes is relatively small.

## D. The Court Should Reject Defendant's Smear Job Tactics.

Although the Court's Order cautioned the parties not to engage in further insults and personal attacks as "wholly inappropriate and "not . . . tolerated" "going forward," (Doc. 47 at 2 n.1), Defendant continues to do so under the guise of citing other decisions in hopes of biasing the Court against Plaintiff and her counsel. (Def.'s Mem. at 1:17-22; 6:11-16.)

Different federal judges have different opinions about the lawyers who practice in front of them. For example, Judge Ohta of the Southern District of California had this to say about Plaintiff's counsel:

> "In your particular case, Counsel, like I said, I was very impressed with your candor. Your measured responses. Fighting the things that need to be fought. Not fighting the things that, really, cannot colorably be fought.
>
> So those are all things from which I have drawn from the fact that you do have a deep respect, not only for the Court, but for your profession and for the ethics of your profession."

(RJN Ex. 9 at 13:3-10.)


Dated: November 9, 2023              PACIFIC TRIAL ATTORNEYS, P.C.

                                     By: _/s/ Scott J. Ferrell_____
                                     Scott. J. Ferrell
                                     Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 9, 2023

*/s/ Scott J. Ferrell*

Scott J. Ferrell
